**Aaron and Sara KASTNER, as Trustees of the Kastner Family Trust, Appellants**

v.

**JENKENS & GILCHRIST, P.C., and George Dunlap, Appellees.**

No. 05–05–01433–CV.

Court of Appeals of Texas, Dallas.

Aug. 20, 2007.

Cary William Schulman, Leon & Schulman, L.L.P., Dallas, for Appellant.

B. Prater Monning III, Monning & Wynne, L.L.P., Gregory M. Weinstein, Godwin Gruber, LLP, Dallas, Mark Nacol, Nacol, Wortham & Associates, P.C., Richardson, TX, for Appellee.

Before Justices MOSELEY, BRIDGES and RICHTER.

## OPINION

Opinion by Justice RICHTER.

This case involves claims asserted by a non-client against an attorney and his law firm after a limited partnership's investment in a commercial real estate venture failed. Appellants Aaron and Sara Kastner are the trustees of the Kastner family trust (collectively, the Kastners). The Kastners, as owners of one of fifteen limited partnership interests in the partnership, asserted claims against counsel for the partnership based on his participation in the purchase of the partnership's sole asset. In three issues, the Kastners contend the trial court erred when it granted appellees' traditional and no evidence motion for summary judgment on their claims for negligent misrepresentation, aiding and abetting breach of fiduciary duty, and aiding and abetting securities fraud.[1] For the reasons below, we affirm the judgment of the trial court.

## I. BACKGROUND

### A. Factual Background

---

1. The Kastners initially asserted seven issues, but conceded at oral argument that summary judgment was appropriate on their claims of fraud, breach of contract, breach of fiduciary duty, and legal malpractice.

Randy Box, a real estate broker, owned a company called Malebox Investment, Inc.[2] In August 2000, Malebox contracted to purchase an apartment complex known as "the Lodges" for $6.9 million dollars. Box and a business associate, Fred Weinberg, planned to sell investment interests in the property. Box retained George Dunlap, an attorney employed by Jenkens & Gilchrist, to provide legal services in connection with the transaction. At Box's request, Dunlap formed Lodges Investors, L.P., a single-asset Texas limited partnership (the Partnership). The Partnership was formed as the purchasing entity to acquire the apartment complex. After Dunlap prepared the limited partnership agreement, Malebox assigned the agreement to purchase the apartment complex to the Partnership. Box and Weinberg then solicited participation in the venture through the sale of limited partnership interests in the Partnership.

The Partnership was structured to include a sole general partner, fifteen Class A limited partners, one special limited partner, and one Class B limited partner. The $6.9 million purchase price for the complex was financed in part by the assumption of a $4,376,356.81 first mortgage on the property. Because the terms of the mortgage prohibited secondary financing without the lender's prior consent, the special limited partner class was essentially created to provide seller financing. One Realco Corp., an affiliate of the seller of the complex, subscribed to the Partnership as the Class B limited partner with a $674,000. contribution. The Class B limited partner was to receive a preferred return in exchange for this investment. To this end, the partnership agreement provided the capital contribution of the Class

B limited partner would be repaid in two scheduled installments. The repayment was to be made through additional pro-rata capital contributions of the Class A limited partners. Upon repayment, the Class B limited partner's interest in the Partnership would be reduced to zero. If the installment payments were not timely made, the Partnership agreement provided the Class B limited partner had the right to remove the general partner and receive an assignment of all of the Class A limited partners' rights.

The partnership agreement required the contributions of the limited partners to be made in cash. The Kastners subscribed to the Partnership as Class A limited partners with an initial capital contribution of $120,000. Some of the other class A limited partners who later became parties to this lawsuit include: Wenz & Associates, Box Interests, Loren Weinstein, and AJ Associates.

An entity known as LIGP, Inc., also formed by Dunlap, was the general partner of the Partnership. Monica Nemtzeanu, president of LIGP, was the special limited partner. Nemtzeanu was also the president of Silverskies Management, Ltd., the company retained to manage the apartment complex once it was acquired by the Partnership.

Dunlap prepared the partnership agreement in accordance with information provided by Box and Weinberg. On February 26, 2001, Dunlap mailed the partnership agreement to each of the limited partners. Exhibit A to the partnership agreement reflected the partnership percentages and capital contributions of the partners. In the accompanying cover letter, Dunlap explained that other than

**2.** At some point during the time frame relevant to this suit the name of the company changed to Box Interests, Inc.

Nemtzeaunu's interest, the final percentages in Exhibit A would be determined at the closing based upon the aggregate capital contributions of the partners. Some of the limited partners, including the Kastners, signed the partnership agreement and returned it to Dunlap. Others waited until the closing to sign.

Dunlap admits he viewed Box as his client. But he also acted as counsel for the Partnership and the general partner in connection with the March 1, 2001 closing. The general partner, Box, Weinberg, and several other limited partners attended the closing, but the Kastners were not present. At the closing, the parties learned the Partnership did not have sufficient funds on deposit with the title company to complete the transaction. The amount of the short-fall was approximately $88,000. To facilitate the closing, the seller agreed to make a short-term loan to the Partnership. According to Dunlap, Weinberg suggested the short-term loan and assured everyone the necessary funds would be available to pay off the loan the next day. Dunlap informed those present that under the terms of the partnership agreement, a loan to the Partnership would require the unanimous consent of all the limited partners. According to Weinberg, the idea for the secondary financing originated with Dunlap. Regardless, there is no question that the limited partners present decided to proceed with the closing and the short-term loan. The loan was documented by a closing agreement prepared by the seller's attorney and signed by the general partner.

Apparently Box and others were to receive certain commissions and equity placement fees in connection with the purchase and sale of the property, but the funds available at closing were not sufficient for payment. On March 5, 2001, Dunlap prepared an "Acknowledgment of Account Payable" in which the Partnership acknowledged an obligation to pay a $41,450 commission to Box Interests and a $20,300 commission to another broker. The Acknowledgment was executed by the general partner of the Partnership.

On March 8, 2001, based on information provided by Box and Weinberg, Dunlap provided each of the partners with a fully executed copy of the partnership agreement with Exhibit A attached. No one suggested to Dunlap that the partnership percentages were inaccurate.

At some point after the Partnership began operating the apartment complex it began to experience financial difficulties. On June 3, 2002, the Partnership filed for protection under Chapter 11 of the United States Bankruptcy Code, and the relationship between the general partner and the limited partners deteriorated. This lawsuit ultimately ensued.

## B. *Procedural Background*

The Kastners filed this lawsuit on behalf of the Kastner Family Trust on June 24, 2003 and asserted claims against Jenkens, Dunlap, Box, Box Interests, Weinstein, Nemtzeanu, AJ Associates, Weinberg, LIGP, Silverskies, and One Realco. The claims against Jenkens were based on a respondeat superior theory of liability for the alleged wrongful conduct of Dunlap as its employee. The Kastners subsequently nonsuited Nemtzeanu, Weinberg, Silverskies, and LIGP. On August 20, 2003, the Kastners entered into a settlement agreement with the Partnership and some of the other defendants. The settlement agreement provided an assignment from the Partnership to the Kastners of a 40% interest in the Partnership's claims against

the defendants named in the lawsuit.[3] On December 1, 2003, the Kastners amended the lawsuit to also assert claims against the defendants on behalf of the Partnership. Box, Weinstein, and AJ Associates counterclaimed against the Kastners. Later, Nemtzeanu, LIGP, and Silverskies (collectively, the Intervenors) intervened in the lawsuit to assert claims against Dunlap, Jenkens and the other defendants. On June 2, 2005, Dunlap and Jenkens filed a traditional and no evidence motion for summary judgment, requesting judgment on all of plaintiffs' claims.[4] Although the plaintiffs responded to the no evidence motion for summary judgment, they did not respond to the traditional motion. On July 26, 2005, the plaintiffs filed their Sixth Amended Petition and asserted claims for: fraud, constructive fraud, fraudulent concealment, negligent misrepresentation, breach of fiduciary duty, violation of the Texas Deceptive Trade Practices Act, aiding and abetting securities fraud, aiding and abetting breach of fiduciary duty, breach of the partnership agreement, and civil conspiracy. On August 1 and 2, 2005, the trial court considered and granted the Jenkens and Dunlap motion for summary judgment on plaintiffs' claims but did not specify the grounds upon which its decision was based. On August 29, 2005, the remaining claims of the Intervenors against Dunlap and Jenkens were called to trial. Upon conclusion of the trial, the trial court rendered judgment in favor of Jenkens and Dunlap. On September 23, 2005, the trial court entered a final judgment disposing of all claims asserted against all parties. This appeal of the summary judgment granted on behalf of

Jenkens and Dunlap (together, Dunlap) followed.

## II. STANDARD OF REVIEW

■ The standard for reviewing a traditional motion for summary judgment is well-established. *See Sysco Food Servs. v. Trapnell,* 890 S.W.2d 796, 800 (Tex.1994); *Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548–49 (Tex.1985). We review a summary judgment de novo to determine whether a party's right to prevail is established as a matter of law. *Dickey v. Club Corp.,* 12 S.W.3d 172, 175 (Tex.App.-Dallas 2000, pet. denied). A party moving for traditional summary judgment is charged with the burden to establish that there are no genuine issues of material fact and it is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c); *M.D. Anderson Hosp. & Tumor Inst. v. Willrich,* 28 S.W.3d 22, 23 (Tex.2000) (per curiam). A matter is conclusively established if ordinary minds could not differ as to the conclusion to be drawn from the evidence. *Triton Oil & Gas Corp. v. Marine Contractors & Supply, Inc.,* 644 S.W.2d 443, 446 (Tex.1982).

When reviewing a no-evidence motion for summary judgment, we examine the record in the light most favorable to the non-movant and disregard all contrary evidence and inferences. *King Ranch, Inc. v. Chapman,* 118 S.W.3d 742, 750–51 (Tex. 2003); *Wal–Mart Stores, Inc. v. Rodriguez,* 92 S.W.3d 502, 506 (Tex.2002). A no-evidence summary judgment is improper if the respondent brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact. TEX.R. CIV. P. 166a(i); *Wal–Mart Stores, Inc.,* 92 S.W.3d at 506. "Less than a scintilla of

---

**3.** One Realco Corp. was expressly excluded because the agreement provided for its dismissal from the lawsuit with prejudice.

**4.** The other defendants also filed motions for summary judgment on both the plaintiffs' and

Intervenors' claims and the trial court granted the motions as to all claims.

evidence exists when the evidence is 'so weak as to do nothing more than create a mere surmise or suspicion' of a fact." *King Ranch,* 118 S.W.3d at 751. More than a scintilla of evidence exists if it would allow reasonable and fair-minded people to differ in their conclusions. *Id.* When the trial court's order granting summary judgment does not specify the grounds upon which it was granted, we will affirm the judgment if any of the theories advanced are meritorious. *Carr v. Brasher,* 776 S.W.2d 567, 567 (Tex.1989).

## III. DISCUSSION

### A. *Negligent Misrepresentation*

■ In their first issue, the Kastners assert the trial court erred when it granted Dunlap's no evidence motion for summary judgment on their negligent misrepresentation claim. Negligent misrepresentation requires proof that: (1) the defendant in the course of his business or a transaction in which he had an interest; (2) supplied false information for the guidance of others; (3) without exercising reasonable care or competence in communicating the information; (4) the plaintiff justifiably relied on the information; (5) proximately causing the plaintiff's injury. *Spethmann v. Anderson,* 171 S.W.3d 680, 688 n. 3 (Tex.App.-Dallas 2005, no pet.). In support of their claim, the Kastners contend Dunlap improperly identified the partners' contributions as cash contributions when they were not all made in cash, incorrectly quantified the general partner's interest, and created a document reflecting the incorrect amount of capital raised by the partnership. They further contend Dunlap represented he would adjust the partnership percentages at closing but failed to do so, and allowed the secondary financing to occur when he knew it violated the terms of the partnership agreement and the first

mortgage. All of this conduct arises out of Dunlap's participation in the March 1, 2001 closing on the Partnership's purchase of the apartment complex. The Kastners acknowledge they had no attorney-client relationship with Dunlap, but insist that Dunlap's conduct falls within the narrow exception to attorney liability for negligent misrepresentation recognized by the Texas Supreme Court in *McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests,* 991 S.W.2d 787, 791 (Tex.1991). We disagree.

■ In *McCamish,* the court considered whether the absence of an attorney-client relationship precludes a third party from suing an attorney for negligent misrepresentation under section 552 of the Restatement (Second) of Torts. The court confirmed that negligent misrepresentation is distinct from malpractice. Negligent misrepresentation liability is not premised on a breach of duty a professional owes to his client or others in privity; instead, liability results from the "professional's manifest awareness of the non-client's reliance on the misrepresentation and the professional's intention that the non-client so rely." *Id.* at 792. Accordingly, the court concluded that the theory of negligent misrepresentation "permits plaintiffs who are not parties to a contract for professional services to recover from the contracting professionals." *Id.*

■ The duty imposed on an attorney to a non-client, however, is limited. The duty only arises when (1) the attorney is aware of the non-client and intends that the non-client rely on the representation; and (2) the non-client justifiably relies on the attorney's representation of a material fact. *Id.* at 794. For purposes of determining whether the non-client justifiably relied on the representation, the reviewing court must consider the nature of the rela-

tionship between the attorney, client, and non-client. *Id.* A non-client cannot rely on an attorney's representations unless the attorney invites that reliance. *Id.* at 795. *See also, Belt v. Oppenheimer, Bland, Harrison & Tate, Inc.,* 192 S.W.3d 780, 788 (Tex.2006) (discussing *McCamish* reliance requirement in the context of estate planning malpractice claim).

■ The reliance element is absent in this case. There is no evidence Dunlap invited or was aware of the Kastners' reliance. Prior to the closing, Dunlap prepared transactional documents for his clients based on the information and instructions his clients provided. After mailing the fully executed partnership agreement in March after the closing, Dunlap had no further involvement with the Partnership. The *McCamish* court observed that when attorneys have been held liable to non-clients for negligent misrepresentation in other jurisdictions, the situation typically involved the attorney's issuance of an opinion letter or some other type of evaluation. *Id.* at 793. Here, the only communication Dunlap had with the Kastners consisted of a cover letter accompanying the partnership agreement. The cover letter contained no legal opinions or evaluations; it conveyed neutral information about the mechanics of the revisions he anticipated after the closing. The relationship of the parties is also significant. Dunlap represented the Partnership, the general partner, and Box. It is well-established that an attorney's representation of a partnership does not constitute representation of each of the individual partners. *See* TEX DISC R PROF CONDUCT 1.12(a) (lawyer retained by entity represents entity as distinct from its members); *Gamboa v. Shaw,* 956 S.W.2d 662, 666 (Tex.App.-San Antonio 1997, no writ) (cause of action for injury to corporation belongs to corporation not shareholders). Therefore, Dun-

lap's representation of the Partnership and the Kastners' status as limited partners in and of itself is not sufficient to justify reliance. But the record shows nothing more than this representation. Under these circumstances, there was no reason for Dunlap to anticipate the non-client recipients might attach any extraordinary significance to his transmission of the partnership agreement or the accompanying correspondence.

■ The Kastners argue their reliance was justified because the correspondence they received was on the letterhead of "a large Dallas law firm." We are not persuaded such superficial indicia justifies reliance. Regardless of origin, the mere transmission of a partnership agreement from an attorney to a non-client cannot reasonably be construed as a legal opinion on the validity of the agreement or the propriety of investment in the partnership. We similarly reject the Kastners' attempt to characterize the contents of the partnership agreement as representations made by Dunlap. To do so would effectively require attorneys to adopt as their own the terms of—and representations made in— legal documents they prepare for their clients. Such an expansive interpretation far exceeds the scope of *McCamish* liability.

■ The Kastners' claim also fails because the alleged misrepresentations cannot form the basis for a tenable negligent misrepresentation action. The Kastners assert Dunlap failed to disclose the extent of the fees and commissions being paid. According to the Kastners, Dunlap also failed to inform the limited partners about the secondary financing that occurred at closing. Finally, the Kastners maintain Dunlap promised to adjust the partnership percentages in Exhibit A. In the context of fraud, a misrepresentation may consist of the concealment of nondis-

closure of a material fact when there is a duty to disclose. *See Reynolds v. Murphy,* 188 S.W.3d 252, 270 (Tex.App.-Fort Worth 2006, pet. denied); *Spoljaric v. Percival Tours, Inc.,* 708 S.W.2d 432, 435 (Tex.1986). Negligent misrepresentation, however, contemplates a misstatement of existing fact. *See Airborne Freight Corp. Inc. v. C.R. Lee Enters., Inc.,* 847 S.W.2d 289, 294 (Tex.App.-El Paso 1992, writ denied) (false information in negligent misrepresentation case involves misstatement of existing fact, not promise of future conduct); *BCY Water Supply Corp. v. Residential Inv. Inc.,* 170 S.W.3d 596, 603 (Tex. App.-Tyler 2005, pet. denied) (same). Because none of the alleged misrepresentations constitute representations of existing fact they are insufficient to establish negligent misrepresentation. We conclude the trial court properly granted summary judgment and resolve the Kastners' first issue against them.

B. *Aiding and Abetting Securities Fraud*

In their second issue, the Kastners maintain the trial court erred when it granted summary judgment on their claim against Dunlap for aiding and abetting securities fraud. The claim was asserted under the Texas Securities Act, which provides in pertinent part:

> A person who directly or indirectly with intent to deceive or defraud or with reckless disregard for the truth or the law materially aids a seller, buyer, or issuer of a security is liable ... jointly and severally with the seller, buyer, or issuer, and to the same extent as if he were the buyer, seller, or issuer.

TEX.REV.CIV. STAT. ANN. Art. 581–33(F)(2) (Vernon 2006). The TSA expressly includes a limited partnership interest in the definition of what constitutes a "security" for purposes of the Act. TEX.REV.CIV. STAT. ANN. Art. 581-4 (Vernon 2006). Significantly, however, aider liability under the TSA is derivative; a secondary violator may only be held liable "to the same extent as" the primary violator. TEX.REV. CIV. STAT. ANN. Art. 581–33(F)(2) (Vernon 2006); *Sterling Trust Co. v. Adderley,* 168 S.W.3d 835, 845 (Tex.2005). Thus, the liability of the primary violator must be established before liability will attach to a secondary violator. *Id.*

█ In this case, the summary judgment evidence does raise an issue of fact as to each element necessary to establish Box's primary liability. It is axiomatic that Dunlap cannot be secondarily liable for a primary violation which, from an evidentiary standpoint, never occurred. Moreover, even if there were a primary violation, the Kastners' failure to adduce some evidence raising a fact issue as to scienter on Dunlap's part is fatal to the claim. The TSA only imposes liability on an aider if he acted with "intent to deceive or defraud or with reckless disregard for the truth or the law." TEX.REV.CIV. STAT. ANN. Art. 581–33(F)(2) (Vernon 2006); *Sterling Trust Co.,* 168 S.W.3d at 844–845. The summary judgment evidence shows Dunlap was not aware the Partnership percentages were inaccurate. To the contrary, Dunlap testified that he still believes the partnership percentages are inaccurate. He believed the cash short-fall at closing resulted from an inaccurate estimate of the funds needed to close rather than a failure to obtain the necessary subscriptions. Dunlap did not advise the Kastners about the secondary financing because he did not represent them. Because the Kastners failed to establish otherwise, and adduced no evidence to establish Dunlap acted with scienter, the trial court did not err in dismissing this claim. The Kastners' second issue is overruled.

C. *Claims Asserted on Behalf of the Partnership*

When the Kastners filed their fifth amended petition, they asserted claims on

behalf of the Partnership pursuant to the assignment they received in the settlement agreement. The Kastners conceded at oral argument their malpractice claims should not have survived summary judgment. But it is not entirely clear if or to what extent the Kastners purport to assign error with regard to the entry of summary judgment on other Partnership claims.

The final judgment states the trial court considered Dunlap's motion "with respect to the claims of plaintiffs Aaron and Sara Kastner as Trustees of the Kastner Family Trust and the Lodges Investors, L.P." The judgment orders that "[P]laintiffs Aaron Kastner and Sara Kastner, as Trustees of the Kastner Family Trust and The Lodges Investors, L.P. have and recover nothing from defendants Jenken & Gilchrist, P.C. and George Dunlap." The notice of appeal in this matter is filed only as to the Kastners as trustees of the Kastner family trust. Nonetheless, the Kastners' brief appears to allude to Partnership claims and asserts in a footnote that summary judgment was improper because the claims were asserted in the form of a derivative suit that "substantially complies" with the requirements for such a claim. Because the notice of appeal does not include the Partnership, we presume the Kastners did not appeal the summary judgment with regard to any claims asserted derivatively by the Kastners on behalf of the Partnership. See Tex.R.App. P. 25.1(d)(5). Even if the Kastners did intend such an appeal and the defect could be remedied, we conclude the briefing fails to comply with Tex.R.App. P. 38.1(h), and review is therefore waived.

D. *Aiding and Abetting Breach of Fiduciary Duty.*

In their third issue, the Kastners argue the trial court erred by granting summary judgment on their claim that Dunlap aided and abetted a breach of fiduciary duty. The claim is premised on two alleged fiduciary relationships. The first relationship in which the Kastners contend a duty arises is between Box as the general partner and themselves. The second relationship is alleged to exist between the general partner and the Partnership. Because our conclusion concerning claims asserted on behalf of the Partnership necessarily disposes of this issue as to the Partnership, our analysis focuses only on the claim as it pertains to the Kastners.

The crux of the Kastners' argument is that through his representation of Box, Dunlap aided and abetted Box in a breach of fiduciary duty he owed to the Kastners. When a third party knowingly participates in the breach of a fiduciary duty, the third party becomes a joint tortfeasor and is liable as such. *Kinzbach Tool Co. v. Corbett–Wallace Corp.*, 138 Tex. 565, 160 S.W.2d 509, 513–14 (Tex. 1942); *Brewer & Pritchard, P.C. v. Johnson*, 7 S.W.3d 862, 867 (Tex.App.-Houston [1st Dist.] 1999) *aff'd on other gr.*, 73 S.W.3d 193 (2002). A cause of action premised on a contribution to a breach of fiduciary duty must involve the knowing participation in such a breach. *Cox Texas Newspapers, L.P. v. Wootten*, 59 S.W.3d 717, 722 (Tex.App.-Austin 2001, pet. denied). Here, even if we assume without deciding there was a breach, there is again no evidence to raise a fact question as to whether Dunlap knowingly participated in the breach.

In addition, there is no evidence to establish any of Dunlap's actions occurred independently of his representation of Box. The supreme court has not extended the reach of *McCamish* to include an aiding and abetting breach of fiduciary duty claim asserted by a non-client based upon the rendition of legal advice to a tortfeasor

client. *See Alpert v. Crain, Caton & James, P.C.*, 178 S.W.3d 398, 407 (Tex. App.-Houston [1st Dist.] 2005, pet.denied); *see also, McCamish*, 991 S.W.2d at 793–94 (explaining that holding applies only to a narrow class of claimants who meet reliance criteria). We therefore decline the Kastners' suggested application.

■ The Kastners also argue the trial court should not have granted summary judgment because the no-evidence motion did not address the securities fraud issue and the traditional motion had no evidence attached to it. This argument is contrary to the record and lacks merit. The traditional and no-evidence grounds for summary judgment were contained in a single document which expressly moved on all of plaintiffs' claims. The traditional motion was based on two affidavits specifically identified on the first page of the motion and filed and served contemporaneously with the motion. The Texas Rules of Civil Procedure do not require that summary judgment evidence be physically attached to the motion. Instead, the rules embody an infinitely more practical requirement that evidence be "filed and served" with the motion. See TEX.R. CIV. P. 166a(c). The record reflects compliance with the rule. Therefore, we conclude summary judgment was proper on this claim.

Having resolved all of the Kastners' issues against them, we affirm the trial court's judgment.