Opinion issued February 10, 2011



In The

Court of Appeals

For The

First District of Texas

____________

 

NO. 01-07-00397-CV

____________

 

JSC NEFTEGAS-IMPEX, Appellant

 

V.

 

CITIBANK, N.A., Appellee

 

* * *

 

CITIBANK, N.A., Appellant

 

V.

 

JSC NEFTEGAS-IMPEX, Appellee



 



 

On Appeal from the 152nd District Court

Harris County, Texas

Trial Court Cause No. 1998-37793



 



 

 

OPINION DISSENTING ON REHEARING

          I join the panel’s opinion
except for those portions affirming the judgment notwithstanding the verdict
(“JNOV”) on JSCNI’s (1) request for exemplary damages and (2) claims based on
the unfair structure of Phase III, specifically, those for conspiracy and
knowing participation in breach of fiduciary duty.  To the extent that the
Court’s judgment is based upon these portions of the opinion, I respectfully
dissent.

A.      Exemplary Damages

          The majority opinion
thoroughly discusses the evidence supporting the jury’s finding of fraud under
the theory that Citibank misrepresented the $550,000’s use as a security
deposit—evidence showing, for example, Kermath’s representations to JSCNI that
the funds would be held as any other security deposit, his communications to
others before and after those representations instructing that the funds be
used differently, and his advice that TPS use the funds to
benefit Citibank and its important client.  I agree with our holding that the
cited evidence was some evidence to support this theory of fraud under a
preponderance-of-the-evidence burden.

          But unlike the majority, I
would further hold that this same evidence was also sufficient for a reasonable
trier of fact to have formed a firm belief or conviction that fraud had
occurred—including that Kermath intended at the time of his representations
that at least some of the $550,000 would not be used as he said.  

          The jury could simply have
disbelieved Kermath’s and the TPS representatives’ stated belief, which was
contradicted by other credible evidence or the Phase III contracts themselves,
that their actions comported with the Phase III contracts.  For the same
reasons, the jury could also have discredited Kermath’s testimony that he never
advised TPS how to use the funds or discussed the security-deposit schedules at
the August 15 closing.[1]  The jury’s ability to
believe or to disbelieve any witness does not evaporate just because the burden
of proof is heightened.  See In re J.F.C., 96 S.W.3d 256, 264 (Tex.
2002) (noting that, even under heightened standard of review, “[A] court should
disregard all evidence that a reasonable fact‑finder could have
disbelieved or found to have been incredible.”).

          Neither does the jury’s
ability to draw reasonable inferences from the evidence evaporate.  See City
of Keller v. Wilson, 168 S.W.3d 802, 821 (Tex. 2005) (“Even if the evidence
is undisputed, it is the province of the jury to draw from it whatever
inferences they wish, so long as more than one is possible and the jury must
not simply guess.”); In re T.N., 180 S.W.3d 376, 382 (Tex. App.—Amarillo
2005, no pet.) (concerning appellate review of judgment rendered on clear‑and-convincing
proof, providing, “The reviewing court must recall that the trier of fact has
the authority to weigh the evidence, draw reasonable inferences therefrom, and
choose between conflicting inferences.”).  The evidence here—whether disputed
or not—allows for several reasonable inferences concerning Kermath’s intent,
e.g., (1) intent to defraud extant at the time of his representations, (2)
intent to defraud arising later, and (3) mistake and no intent to defraud at
any time.  The inference that the jury drew here was one of those, and the
evidence underlying it, albeit circumstantial, was sufficient for a reasonable
trier of fact to have formed a firm belief or conviction of Kermath’s
fraudulent intent.  See Hubicki v. Festina, 156 S.W.3d 897, 904 (Tex.
App.—Dallas 2005) (under heightened standard of review, holding that sufficient
evidence supported fraud finding underlying exemplary damages award when
finding was based on circumstantial evidence that defendant intended not to
perform at time of representation: testimony was that plaintiff believed that
defendant never intended to fulfill promise based on long-standing relationship
between parties, plaintiff’s knowledge of defendant’s business practices, and statements
made by defendant when refusing to fulfill promise), rev’d on other grounds,
226 S.W.3d 405 (Tex. 2007).  As the Hubicki court noted in holding that
the circumstantial evidence in that case met the clear-and-convincing burden,
fraudulent intent is virtually always proved by circumstantial evidence because
it simply is not susceptible to direct proof.  Id.; see Spoljaric v. Percival Tours, Inc., 708 S.W.2d 432, 435 (Tex. 1986) (“Since
intent to defraud is not susceptible to direct proof, it invariably must be
proven by circumstantial evidence.”).  If the circumstantial evidence in Hubicki
sufficed, then I fail to see why the evidence produced here does not.

          For these reasons, I would
hold that that the same evidence supporting the fraud‑liability finding
was also sufficient for the jury to form a firm belief or conviction that fraud
had occurred.  I would thus further hold that the trial court erred in granting
Citibank’s JNOV motion on the jury’s exemplary damages finding.  To the extent
that the majority’s judgment does not do so, I respectfully dissent.

B.      Civil Conspiracy and Knowing Participation in
Breach of Fiduciary Duty Based on Unfairness of Phase III’s Structure

 

          I further dissent from the
majority’s judgment to the extent that it affirms the JNOV rendered on JSCNI’s
claims that were predicated upon the unfairness of Phase III’s structure to
JSCNI: civil conspiracy and knowing participation in breach of fiduciary duty.

          What the evidence viewed in
the light most favorable to JSCNI showed is that Citibank and TPS were taking
almost no risk—except the “risk” of not making hundreds of thousands of dollars
in fees if the deal failed to close—in financing the Project.  Citibank’s own
words are the best evidence of its intent: in its internal documents, Citibank
admitted that TPS and Citibank negotiated the unusual term that JSCNI would
“prepay[] a large part of the equipment purchase” (i.e., the full‑cash‑collateral
requirement) exactly because they sought “to reduce TPS/Santos family risk in
the transaction.”

          This is important for three
reasons.  First, Manuel Santos was a co-owner of TPS, and the Santos family
members were important Citibank clients apart from this transaction.  Second,
Citibank knew that TPS was JSCNI’s agent for the Project and for obtaining
funding, that is, Citibank should have known that TPS had a fiduciary duty to
JSCNI.  Third, even as they negotiated this risk-minimizing structure for
themselves, TPS and Citibank knew that JSCNI and its affiliate guarantors would
be the ones putting up all initial collateral for the Project, since TPS had a
negative net worth at the time.

          All that JSCNI had to
produce in support of its claims was some evidence that would allow
reasonable and fair-minded people to reach the verdict that these jurors did.  See
City of Keller, 168 S.W.3d at 827.  This is not a high burden, and I
believe the above evidence met it.  First and foremost, it is some evidence
that Citibank and TPS had a meeting of the minds to establish a structure that
shifted all of the risk onto JSCNI in order to minimize their own (or their
important client’s) risk, even though TPS was JSCNI’s agent.  See Gary E.
Patterson & Assocs., P.C. v. Holub, 264 S.W.3d 180, 204 (Tex.
App.—Houston [1st Dist.] 2008, pet. denied) (setting out elements of claim for
civil conspiracy).  It is also is some evidence that Citibank knowingly helped
TPS to breach its fiduciary duty as JSCNI’s agent in order to minimize
Citibank’s own risks in the potentially lucrative transaction.  See Kastner
v. Jenkens & Gilchrist, P.C., 231 S.W.3d 571, 580 (Tex. App.—Dallas
2007, no pet.) (explaining liability for knowing participation in breach of
another’s fiduciary duty).




          For these reasons, I would
hold that sufficient evidence supported the jury’s findings that Citibank and
TPS conspired to structure a transaction that was unfair to JSCNI and that
Citibank knowingly participated in TPS’s breach of fiduciary duty arising from
such a structuring.  I would thus further hold that the trial court erred in
granting Citibank’s JNOV motion on the jury’s affirmative answers to Jury
Questions 18 and 19 and would reach Citibank’s relevant cross-points.  To the
extent that the majority judgment on rehearing does not do so, I respectfully
dissent.

 

 



                                                                      Jim
Sharp

                                                                      Justice

 

Panel consists of Chief Justice
Radack and Justices Sharp and Taft.

Justice Sharp, dissenting in part.









[1]              For example, three witnesses directly contradicted
Kermath’s testimony that he did not discuss the security-deposit schedules at
the August 15 closing.  Moreover, even if the jury could not reasonably have
believed these witnesses’ testimony that Kermath agreed at the August 15
closing to the minimum security‑deposit schedule memorialized by
Abji’s August 27, 1997 letter—because, for example, such a schedule would have
delayed collateral build-up under the full-cash-collateral requirement that
Kermath consistently advised TPS was needed—the jury could nonetheless have
believed their testimony that Kermath represented that the $550,000 was a security
deposit, as an internal Citibank document described it and as Kermath
indicated by the Commitment Letter’s later reference to the funds’ placement in
an Investment Account.  The jury could furthermore have reasonably believed
Abji’s and Karber’s testimony that Kermath advised them on how to use the
$550,000, including in ways that the Phase III contracts did not then allow,
for the benefit of Citibank and its important client, and discredited Kermath’s
contrary testimony.