

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-14-00035-CV

GERALD LYNN CLARK AND JO ANN CLARK, Appellants

V.

TITUS COUNTY, TEXAS, Appellee

On Appeal from the 276th District Court
Titus County, Texas
Trial Court No. 36,149

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Chief Justice Morriss

## MEMORANDUM OPINION

Titus County plans to construct a highway through the middle of 21.02 acres of land owned by Gerald Lynn Clark and Jo Ann Clark and, to accomplish its plan, is pursuing condemnation of a 6.193-acre strip that would leave the Clarks with two separated remnant tracts. The appeal before us concerns the value of the taking and comes from a summary judgment in favor of the County. We reverse the summary judgment and remand this case to the trial court for further proceedings because there is summary judgment evidence in the record that raises a fact issue concerning the value of the taking.

One of the powers of government's sovereignty is eminent domain, the power to take private property for public use, so long as the government pays the citizen "the property's fair value." *State v. Ware*, 86 S.W.3d 817, 821–22 (Tex. App.—Austin 2002, no pet.). The County hired an appraiser who determined that $74,186.00 would justly compensate the Clarks. An offer consistent with the appraiser's figure was extended to and refused by the Clarks.[1]

To help resolve the issue of just compensation, the trial court appointed a panel of three special commissioners to assess damages to the Clarks as a result of the condemnation. *See* TEX. PROP. CODE ANN. § 21.014 (West Supp. 2014). After an evidentiary hearing, the special commissioners awarded $85,186.00 in condemnation damages to the Clarks.[2] The Clarks

---

[1]The County's petition in condemnation stated that it made "a bona fide offer to acquire the property . . . as provided by Section 21.0113 of the Texas Property Code." That section states that an offer is a bona fide offer if "before making a final offer, the [entity with eminent domain authority] obtained a written appraisal from a certified appraiser of the value of the property being acquired and the damage, if any, to any of the property owner's remaining property." TEX. PROP. CODE ANN. § 21.0113(b)(4) (West Supp. 2014).

[2]The Clarks argue that the commissioners' award itself constitutes sufficient summary judgment evidence to combat the County's motion. However, when a party objects to the commissioners' award, (1) the proceeding before the

2

appealed[3] the commissioners' decision with the trial court, arguing that the award was insufficient to adequately compensate them for the value of the land condemned and the damages to the remainder.[4] *See* TEX. PROP. CODE ANN. § 21.018.

After an adequate time for discovery passed, the County filed a no-evidence motion for summary judgment arguing only that the Clarks failed to present any evidence of the fair market value of the land before and after the taking.[5] On June 21, 2013, the trial court initially granted the County's motion. About a month later, the County moved for entry of judgment, attached the appraisal, and argued that damages in the amount of $74,186.00 had been established. On August 2, 2013, the Clarks, who claimed that they had not received notice of the summary judgment hearing, asked the trial court to reconsider the summary judgment and allow the record to be supplemented. At a hearing on the same date, the County told the court, "The only evidence that has been presented in this case of the market value of the subject property of the condemnation is attached as Exhibit A to [the County's] motion for entry of judgment, and that is an appraisal report valuing the property at $74,186." On September 19, 2013, the trial court ruled that the Clarks did not receive notice of the first hearing on the County's motion for

court is a trial de novo, (2) the commissioners' award is vacated, and (3) the award is inadmissible in the trial before the court. *In re State*, 65 S.W.3d 383, 387–88 (Tex. App.—Tyler 2002, orig. proceeding); *see City of McKinney v. Eldorado Park, Ltd.*, 206 S.W.3d 185, 192 (Tex. App.—Eastland 2006, pet. denied).

[3]This so-called "appeal" is instituted by making a timely objection to the commissioners' award with the trial court. That appeal triggers a civil trial. *See* TEX. PROP. CODE ANN. § 21.018 (West 2013).

[4]"If a portion of a tract or parcel of real property is condemned, the special commissioners shall determine the damage to the property owner after estimating the extent of the injury and benefit to the property owner, including the effect of the condemnation on the value of the property owner's remaining property." TEX. PROP. CODE ANN. § 21.042(c) (West Supp. 2014).

[5]This argument was largely based on the fact that the appraiser's report had not yet been filed as evidence in the trial court's record.

3

summary judgment. Accordingly, the trial court granted the Clarks' August 2 motion and set aside the summary judgment.

Although the appraisal was included in the clerk's record at the time of the second summary judgment hearing, the trial court found that the Clarks had failed to present any evidence of market value, granted the no-evidence motion for summary judgment, and entered final judgment awarding $74,186.00 in damages to the Clarks. Because we find that the appraisal itself was evidence of the market value before and after the taking and that an affidavit also on file constituted summary judgment evidence contradicting the appraiser's calculations, we reverse the trial court's judgment and remand the matter for further proceedings.

To prevail on a no-evidence motion for summary judgment, the movant must first allege that there is no evidence of one or more specified elements of a claim or defense on which the nonmovant would have the burden of proof at trial.[6] *Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex. 2006); *see* TEX. R. CIV. P. 166a(i). A nonmovant will defeat a no-evidence summary judgment motion if the nonmovant presents more than a scintilla of probative evidence on each element of his or her claim. *Galindo v. Snoddy*, 415 S.W.3d 905, 911 (Tex. App.—Texarkana 2013, no pet.); *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. App.—Texarkana 2009, no pet.). More than a scintilla of evidence exists when the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997). Less than a scintilla of evidence exists when the

---

[6]It was the Clarks' burden to establish the fair market value of the property. *City of Sugar Land v. Home & Hearth Sugarland*, 215 S.W.3d 503, 514 (Tex. App.—Eastland 2007, pet. denied) (citing *Religious of the Sacred Heart of Tex. v. City of Houston*, 836 S.W.2d 606, 613 (Tex. 1992)).

evidence is "so weak as to do no more than create a mere surmise or suspicion of a fact." *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003).

"When reviewing a no-evidence summary judgment, we 'review the evidence . . . in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *Timpte*, 286 S.W.3d at 310 (quoting *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006)).

Both the United States and Texas Constitutions require governments to compensate landowners for takings of their property. U.S. CONST. amend. V (requiring just compensation); TEX. CONST. art. 1, § 17 (no taking without adequate compensation). When a government condemns real property, the normal measure of damages is the land's fair market value at the time of the taking.[7] TEX. PROP. CODE ANN. § 21.042(b); *Enbridge Pipelines* (*E. Tex.*) *L.P. v. Avinger Timber, LLC*, 386 S.W.3d 256, 261 (Tex. 2012). Where a condemnor's offer for the price of land is refused, the objective of the judicial process is to make the landowner whole. *Enbridge*, 386 S.W.3d at 261; *Exxon Pipeline Co. v. Zwahr*, 88 S.W.3d 623, 628 (Tex. 2002).

Here, because only a portion of the Clarks' tract was taken by condemnation, they are entitled to (1) the fair-market value of the land taken at the time of taking, (2) plus any resulting damage to the remaining property as a result of the taking. *Zwahr*, 88 S.W.3d at 627; *Home & Hearth Sugarland*, 215 S.W.3d at 514. "The general rule for determining fair-market value is

---

[7]"Market value is defined as the price the property would bring when offered for sale by one who desires to sell but is not obliged to do so and bought by one who desires to buy but is under no necessity to do so." *Home & Hearth Sugarland*, 215 S.W.3d at 511.

5

the before-and-after rule, which requires measuring the difference in the value of the land immediately before and immediately after the taking." *Zwahr*, 88 S.W.3d at 627; *see Home & Hearth Sugarland*, 215 S.W.3d at 515 (discussing valuation of remainder) (citing *Zwahr*, 88 S.W.3d at 628; *Callejo v. Brazos Elec. Power Coop., Inc.*, 755 S.W.2d 73, 76 (Tex. 1988)).

The question of market value is one of fact. *City of Sherman v. Wayne*, 266 S.W.3d 34, 46 (Tex. App.—Dallas 2008, no pet.); *Tex. Elec. Serv. Co. v. Graves*, 488 S.W.2d 135, 139 (Tex. Civ. App.—El Paso 1972, writ ref'd n.r.e). Because value is determined at the time of the taking, "the fact that previous improvements have been made by the condemnor or others is a factor which it is proper to consider." *McChristy v. Hall County*, 140 S.W.2d 576, 577 (Tex. Civ. App. 1940). "Damages due to required modifications to the remainder, as a result of the condemnation . . . on a proper showing, [may] be compensable." *Interstate Northborough P'ship v. State*, 66 S.W.3d 213, 224 (Tex. 2001).

The County hired Michael Welch, an appraiser from the Texas Department of Transportation. Welch concluded that $74,186.00 would justly compensate the Clarks. We here set out Welch's process used in arriving at this figure because it aids our determination that there was sufficient evidence to combat both the County's no-evidence motion for summary judgment alleging that there was *no evidence* of market value and the amount of damages awarded in the final judgment entered.

First, Welch determined the fair market value of the entire 21.02-acre tract at the time of the taking. To accomplish this task, Welch used the comparable sales approach.[8] Using the market values of five tracts of similarly sized land located around the Clarks' tract, Welch determined that the Clarks' land, before the taking, should be valued at $4,000.00 per acre for a total value of $84,080.00. Welch's appraisal then took into consideration improvements on the land,[9] including an 848-square-foot residence, a 371-square-foot wooden porch, a septic system, 1,853 linear feet of barbed-wire fencing, and 377 linear feet of mesh fencing. Using the cost approach[10] to value improvements to the land, Welch assigned a value of $30,491.00 to the residence, $4,155.00 to the porch, $1,625.00 to the septic system, $3,706.00 to the barbed-wire fencing, and $943.00 to the mesh fencing. By adding the total value of the whole tract before the taking ($84,080.00) to the total contributory value of the improvements ($40,920.00), Welch determined that the fair market value of the property before the taking was $125,000.00.

Second, Welch determined the fair market value of the property to be acquired (subject property) at the time of the taking. Welch valued the land at $24,772.00 (6.193 acres x $4,000.00 per acre). The values of the residence, wooden porch, septic system, and mesh fencing were added to the equation because they were all located on the subject property. However, because the subject property only had 668 linear feet of barbed-wire fencing, as

---

[8]"Courts have long favored the comparable sales approach when determining the market value of real property." *City of Harlingen v. Estate of Sharboneau*, 48 S.W.3d 177, 182 (Tex. 2001).

[9]Welch's appraisal did not take into consideration the value of a majority of improvements made to the remainder because he determined that they would not be impacted by the acquisition.

[10]"The cost approach looks to the cost of replacing the improved property while taking depreciation into account. That method is appropriate for assessing the value of improved property that is unique in character and not frequently exchanged in the marketplace." *Home & Hearth Sugarland*, 215 S.W.3d at 515.

opposed to 1,853 linear feet included on the entire tract, the value assigned to the fencing was $1,336.00, dropping the total value of the improvements on the subject property to $38,550.00 ($40,920.00 - $2,370.00). Thus, Welch found that the total value of the subject property at the time of the taking was $63,322.00 ($24,772.00 + $38,550.00).

Third, Welch subtracted the value of the subject property from the value of the whole tract at the time of the taking in concluding that the value of the remainder at the time of the taking was $61,678.00 ($125,000.00 - $63,322.00).

Fourth, Welch valued the fair market value of the remainder after the taking. He determined that the property's highest and best use was rural residential use. In his comparable sales analysis, Welch used the values of five tracts of similarly sized land with roadway access located around the Clarks' tract and determined—based on factors including the remainder's future frontage on the roadway—that the Clarks' land, after the taking, should be valued at $5,500.00 per acre, yielding a total land value of $81,549.00 ($5,500.00 x 14.827 acres).

Fifth, Welch determined that additional fencing and two gates were required to restore the property to the state it was in before the acquisition and avoid damages to the remainder. Welch determined that 2,925 linear feet of barbed-wire fencing was required, budgeted four dollars per linear foot of fence, and concluded that the fence damage estimate was $11,700.00. However, because his appraisal had already compensated the Clarks for the current market value of the fence located on the subject property, Welch deducted the $1,336.00 previously credited (the cost to replace the 668 linear feet of fencing, depreciated by fifty percent), leaving a total

8

fence-damage estimate of $10,364.00. Welch also added $500.00 as the cost to place two gates on the property.

Finally, Welch calculated the total amount that would be required to fairly compensate the Clarks by adding (1) the fair-market value of the land taken at the time of taking and (2) any resulting damage to the remaining property as a result of the taking. *See Zwahr*, 88 S.W.3d at 627. Again, Welch determined that the fair market value of the subject property was $63,322.00. He added in the fence and gate estimate ($10,864.00) to conclude that $74,186.00 would fairly compensate the Clarks.

Because the Clarks did not file Welch's appraisal with the trial court and did not present an alternative appraisal, the County filed its no-evidence motion for summary judgment. In response, Gerald filed an affidavit swearing that he received an estimate that the materials and installation for 2,925 linear feet of fencing would cost $14,625.00 instead of the $11,700.00 Welch allotted for in his appraisal.[11] Gerald's estimate (1) was provided by Robert Thomas Construction, (2) was based on a price of $5.00 per linear foot of fence, and (3) was attached as summary judgment evidence. Nevertheless, even though Welch's report was on file, the trial court stated in its final judgment that the Clarks failed to produce any evidence of the difference

---

[11]Gerald's affidavit also argued that Welch failed to take into account that the residence located on the subject property would have to be moved to the remainder and would require access to "water, septic, or other services necessary to restore the home to its prior use." Seeking additional damages, Gerald attached the following estimates (1) $7,500.00 for installation of a new septic system, (2) $1,600.00 to remove the condenser from the house and prepare it for re-installation, (3) $1,500.00 to lay approximately 1,000 feet of PVC pipe with water meters, a box, and a cut-off for the house, and, (4) $31,000.00 for materials and labor to construct a driveway to the house once it was relocated. At present, although the Clarks' pleadings argue that the tract was used as a family farm, Gerald's affidavit does not mention that the remainder was used to farm, and the record is devoid of evidence showing how the remainder is currently being used. We note that Welch's appraisal states that there is another residence located on the remainder.

in market value of their property before and after the taking, yet awarded $74,186.00 in damages.[12]

The sole basis of the County's no-evidence motion for summary judgment was that the Clarks had failed to bring forth any evidence showing the difference in the market value of the property before and after the taking. The County's argument is based on the contention that Welch's appraisal report was not summary judgment evidence because (1) it was not filed in the trial court's record until after summary judgment was initially granted, and (2) it was not attached to the Clarks' response to the summary judgment motion.[13]

Summary judgment evidence need not be physically attached to the motion, but may be "'filed and served' with the motion." *Kastner v. Jenken & Gilchrist, P.C.*, 231 S.W.3d 571, 581 (Tex. App.—Dallas 2007, no pet.) (citing TEX. R. CIV. P. 166a(c)); *see Enter. Leasing Co. of Houston v. Barrios*, 156 S.W.3d 547, 549 (Tex. 2004). Thus, the trial court may consider summary judgment evidence referenced or set forth in the response which is on file at the time of the summary judgment hearing. *Wilson v. Burford*, 904 S.W.2d 628 (Tex. 1995); *Kastner*, 231 S.W.3d at 581. In reviewing a summary judgment motion, we review the entire record in the light most favorable to the nonmovant. *Sudan*, 199 S.W.3d at 291.

---

[12]During the second hearing on the motion for summary judgment, and more artfully at the hearing on the motion for new trial, the Clarks pointed to the fence estimates as evidence supporting an alternative valuation.

[13]The County does not argue that Welch's report is not summary judgment evidence because it is unsworn. *See Gonzalez v. S. Tex. Veterinary Assoc., Inc.*, No. 13-12-00519-CV, 2013 WL 6729873, at *3 (Tex. App.—Corpus Christi Dec. 19, 2013, pet. denied) (mem. op.). An opposing party's unsworn expert report is proper summary judgment evidence when produced by a nonmovant in the context of a no-evidence motion for summary judgment. *Huckaby v. Bragg*, No. 12-05-00245-CV, 2006 WL 1791669, at *3 (Tex. App.—Tyler June 30, 2006, no pet.) (mem. op.).

Welch's report was filed with the trial court before the second summary judgment hearing, and his conclusion was specifically mentioned in the Clarks' response to the no-evidence motion for summary judgment. At the final hearing, the trial court heard both the summary judgment motion and the County's motion for entry of final judgment, to which were attached the Welch report. Further, the Welch report was referenced by the County as evidence of market value in this case and was reviewed by the trial court in assessing the damage amount. Because we are to review the entire record in the light most favorable to the Clarks and because the lack of attachment is not fatal to the use of the appraisal, we consider the appraisal in our review of the trial court's summary judgment.

While Gerald's affidavit does not, within its four corners, provide all information needed to calculate compensation to the Clarks, it does provide information that, when considered in conjunction with Welch's appraisal, provides a different compensation figure for the Clarks. Because Welch's appraisal was evidence of market value and Gerald's affidavit provided evidence to modify some of Welch's appraisal, the County's sole ground for its no-evidence summary judgment should have been overruled.[14]

Next, we demonstrate the effect of Gerald's affidavit on Welch's appraisal to the extent that the County argues that compensation in the amount of $74,186.00 was established as a matter of law.

---

[14]Again, in its written motion, the County did not argue that the Clarks failed to produce evidence of damages in an amount that exceeded Welch's calculation; this argument was made only at the hearing. Instead, the County's written motion alleged that the Clarks produced no evidence of market value.

As stated in *State v. Carpenter*,

> [T]he better general rule with reference to fences, which may also be applied to certain other improvements, is stated in 2 Lewis on Eminent Domain, § 498, in this language: "Where, by taking a part of a tract, additional fencing will be rendered necessary in order to the reasonable use and enjoyment of the remainder, as it probably will be used in the future, and the burden of constructing such additional fence is cast on the owner of the land, then the burden of constructing and maintaining such fence, in so far as it depreciates the value of the land, is a proper element to be considered in estimating the damages . . . . It is a question of damage to the land, as land."

*State v. Carpenter*, 89 S.W.2d 979, 981 (Tex. Comm. App. 1936).

Here, Welch determined that the fencing was necessary to prevent damages to the remaining property. Welch's fence damage estimate was based on a replacement cost of $4.00 per linear foot. Gerald introduced evidence that the fence would cost an additional dollar per linear foot. As we explain below, Gerald's evidence impacted and contradicted Welch's calculations.

In his first step, Welch determined the fair market value of the entire 21.02-acre tract, taking into consideration 1,853 linear feet of barbed-wire fencing. Welch used the cost approach to value the existing fence. The cost approach looks to the cost of replacing the improved property while taking depreciation into account. Based on $4.00 per linear foot, Welch determined that the fence would cost $7,412.00 to replace. He then depreciated the fence at fifty percent, yielding a figure of $3,706.00 as the market value of the current fence. If the cost to replace the fence was $5.00 per linear foot, as Gerald's summary judgment evidence showed, (1) the replacement cost of the fence would be $9,265.00, (2) the depreciated value of the current fence would be $4,632.50, (3) the total contributory value of improvements would be $41,846.50

instead of $40,920.00, and (4) the fair market value of the entire tract before the taking would be $125,926.50 ($41,846.50 + land value of $84,080.00) instead of $125,000.00.

Welch's determination of the fair market value of the subject property at the time of the taking would also change. Using the cost approach, Welch determined that the value of the 668 linear feet of barbed-wire fencing was $1,336.00 ((668 x $4.00 per linear foot = $2,672.00) x fifty percent for depreciation). At $5.00 per linear foot, the value of the fence would be $1,670.00, the improvements on the subject property would be $38,884.00 instead of $38,550.00, and the total value of the subject property at the time of the taking would be $63,656.00 ($38,884.00 + land value of $24,772.00) instead of $63,322.00. Also, the remainder of the property—calculated by subtracting the value of the whole tract from the value of subject property at the time of the taking—would be $62,270.00 ($125,926.00 - $63,656.00) instead of $61,678.00 ($125,000.00 - $63,322.00).

Last, replacing the $4.00 per linear foot fence estimate with Gerald's $5.00 estimate, (1) the 2,925 fence would cost $14,625.00 instead of $11,700.00, (2) there would be a deduction of $1,670.00 instead of $1,336.00 for the current market value of the fence located on the subject property, (3) the total fence damage to the remainder (adding $500.00 for the cost of the gates) would be $13,455.00 instead of $10,864.00, and (4) the total compensation amount would be $77,111.00 instead of $74,186.00.

When viewed in a light most favorable to the Clarks, Welch's appraisal and Gerald's affidavit with its attached fence estimate constituted (1) more than a scintilla of evidence of fair market value of the subject property before the taking and (2) a market-value alternative to that

13

suggested by Welch. Accordingly, the trial court erred in granting the County's no-evidence summary judgment motion.

We reverse the trial court's judgment and remand the case to the trial court for further proceedings consistent with this opinion.


Josh R. Morriss, III
Chief Justice

Date Submitted:     August 12, 2014
Date Decided:       September 19, 2014