ACCEPTED
07-13-00130-CV
SEVENTH COURT OF APPEALS
AMARILLO, TEXAS
2/6/2015 5:04:55 PM
Vivian Long, Clerk

# KELLY ⓚ HART

JOHN H. CAYCE, JR.
*john.cayce@kellyhart.com*

TELEPHONE: (817) 878-3597
FAX: (817) 878-9797

FILED IN
7th COURT OF APPEALS
AMARILLO, TEXAS

2/6/2015 5:04:55 PM

VIVIAN LONG
CLERK

February 6, 2015

**Via Electronic Filing**
Peggy Culp, Clerk
Seventh Court of Appeals
P.O. Box 9540
Amarillo, TX  79105-9540

Re:  Cause No. 07-13-00130; *Jackson Walker, LLP, et al. v. Virginia O. Kinsel, et al.*

Dear Ms. Culp:

The above case was submitted on oral argument on May 13, 2014.  The purpose of this letter is to inform the Court of a recent opinion of the Second Court of Appeals that is dispositive of an issue in this case.[1]  Please circulate this letter and the attached opinion to the members of the Court.

In *Heat Shrink Innovations, LLC v. Med. Extrusion Techs.-Tex., Inc.*, No. 02-12-00512-CV, 2014 WL 5307191, at *11-12 (Tex. App.—Fort Worth Oct. 16, 2014 no pet. h.), *reh'g overruled* (Dec. 4, 2014) (mem. op.), the trial court submitted a conspiracy liability question to the jury, but did not submit a damage question asking what damages, if any, were proximately caused by the conspiracy apart from those caused by the underlying tort.  The Court held that "[w]ithout a finding on the amount of damages caused by the conspiracy, [the plaintiff] failed to prove an essential element of its cause of action."  *Id*., at *12.  According to the Court, "[t]he damages proximately resulting from the conspiracy must be proven like any other element."  *Id*., at *11.

The Kinsels' conspiracy claim fails in this case for the same reason.  Like *Heat Shrink Innovations*, there is no finding that the alleged conspiracy proximately resulted in any damage to the Kinsels.  Thus, the trial court's judgment on that claim must be reversed and a take nothing judgment rendered in favor of Appellants.  [*See* JW/Keith Br. 48-49; JW/Keith Reply Br. 23-24].

---

[1]  TEX. R. APP. P. 41.3 (transferred case must be decided in accordance with precedent of transferor court).

**FORT WORTH OFFICE**  | 201 MAIN STREET, SUITE 2500 | FORT WORTH, TX 76102 | TELEPHONE: (817) 332-2500 | FAX: (817) 878-9280

AUSTIN OFFICE  | 301 CONGRESS, SUITE 2000 | AUSTIN, TX 78701 | TELEPHONE: (512) 495-6400 | FAX: (512) 495-6401

*Kelly Hart & Hallman, a Limited Liability Partnership | www.kellyhart.com*

February 6, 2015
Page 2

Respectfully,

*/s/ John H. Cayce, Jr.*
John H. Cayce, Jr.

cc: **<u>Via Electronic Service</u>**
Craig T. Enoch                    cenoch@enochkever.com
Amy L. Saberian                  asaberian@enochkever.com
J. Lyndell Kirkley               kirkley@kbblawyers.com
Lindy D. Jones                   ljones@jonesallen.com
Laura Worsham                    lworsham@jonesallen.com
William L. Kirkman               billk@bourlandkirkman.com
Susanna Johnson                  susannaj@bourlandkirkman.com

2014 WL 5307191

SEE TX R RAP RULE 47.2 FOR DESIGNATION AND SIGNING OF OPINIONS.
**MEMORANDUM OPINION**
Court of Appeals of Texas,
Fort Worth.

HEAT SHRINK INNOVATIONS, LLC; Kevin Wolfe; and Deborah Wolfe, Appellants

v.

MEDICAL EXTRUSION TECHNOLOGIES–TEXAS, INC., a Texas Corporation, Appellee.

No. 02–12–00512–CV.   |   Oct. 16, 2014.   |   Rehearing and Rehearing En Banc Overruled Dec. 4, 2014.

**Synopsis**
**Background:** Tubing company sued former employers and their competitor company, seeking an injunction and raising claims for misappropriation of trade secrets, breach of fiduciary duty, violations of the Texas Theft Liability act, unfair competition, unjust enrichment, tortious interference with business relationships, civil conspiracy, and conversion. The 367th District Court, Denton County, Margaret Barnes, J., entered judgment on jury verdict in favor of tubing company and entered permanent injunction. Former employees and competitor company appealed.

**Holdings:** The Court of Appeals, Lee Gabriel, J., held that:

[1] tubing company was not entitled to damages for lost profits;

[2] tubing company had standing to recover damages for costs of machines;

[3] competitor company was jointly and severally liable for damages for breach of fiduciary duty;

[4] permanent injunction was unenforceable;

[5] damages award did not provide tubing company with impermissible double recovery; and

[6] one former employee and competitor could not be jointly and severally liable for other employee's breach of fiduciary duty through conspiracy.

Affirmed as modified.

Bill Meier, J., filed opinion concurring in part and dissenting in part.

West Headnotes (10)

[1]     **Appeal and Error**    Effect of omissions, or imperfections in general

On appeal of judgment in favor of tubing company on misappropriation of trade secrets and other claims, record from trial court was complete, yet insufficient record of evidence presented at trial, as there was no trial record of testimony

that had been presented to jury via videotaped deposition, and thus Court of Appeals was unable to evaluate former employees' and competitor's challenges to the sufficiency of the evidence and was required to overrule those parts of the issues on appeal. Rules App.Proc., Rule 13.1(a).

Cases that cite this headnote

**[2]    Antitrust and Trade Regulation**  Damages

Tubing company, in suit against former employees and their competitor company for misappropriation of trade secrets and other claims, failed to provide a single complete calculation of lost profits as former employees and competitor had requested; even though tubing company pointed to two sections of its owner's deposition testimony and suggested that competitor was responsible for putting the two answers together and concluding that they formed tubing company's damages model, such a burden was on tubing company, not competitor. Vernon's Ann.Texas Rules Civ.Proc., Rules 193.6(a), 194.2(d).

Cases that cite this headnote

**[3]    Fraud**  Persons entitled to sue

Tubing company, in breach of fiduciary duty action against former employees and their competitor company, had legal or equitable interest in tubing expansion machines, and thus had standing to recover damages company suffered from breach of fiduciary duty by former employee for the original costs of designing and manufacturing machines on which competitor had based its machine design, even though tubing company did not pay for the development or manufacture of the machines, but rather machines had been paid for by another company that was operated by tubing company's owner, where machines were in tubing company's possession for its exclusive use.

Cases that cite this headnote

**[4]    Labor and Employment**  Duty not to compete in general

Competitor company, which was started by former employees of tubing company, was jointly and severally liable for damages to tubing company caused by former employee's breach of fiduciary duty, through competitor's knowing participation in former employee's breach; competitor's liability for knowing participation was wholly dependent upon and wholly derived from former employee's breach, and thus competitor's liability was former employee's liability. V.T.C.A., Civil Practice & Remedies Code § 33.001 et seq.

Cases that cite this headnote

**[5]    Injunction**  Non-competition and non-solicitation issues

Permanent injunction, entered in tubing company's action against former employees and their competitor company, which enjoined former employee and competitor from soliciting tubing business, or providing tubing to a list of tubing company's customers, improperly enjoined a far broader ranger of activity than was necessary to protect tubing company's interests and infringed on former employee's and competitor's right to compete. Vernon's Ann.Texas Rules Civ.Proc., Rule 683.

Cases that cite this headnote

**[6]    Injunction**  Non-competition and non-solicitation issues

Terms of permanent injunction entered in tubing company's action against former employees and their competitor company, which enjoined former employee and competitor from soliciting tubing business, or providing tubing to a

list of tubing company's customers, were impermissibly vague, and thus injunction was unenforceable, even if it was proper under the circumstances, where the injunction prohibited sales to list of names but did not provide any further identifying information. Vernon's Ann.Texas Rules Civ.Proc., Rule 683.

Cases that cite this headnote

**[7]     Damages**  ⌐  Nature and theory of compensation

Damages award to tubing company against former employees and their competitor company for $15,000 for misappropriation of trade secrets, and $94,000 for cost of tubing expansion machines for breach of fiduciary duty, did not provide tubing company with impermissible double recovery, even though former employees and competitor argued that same course of conduct formed basis both causes of action; former employees and competitor failed to show how both causes of action addressed same financial injury, as tubing company's trade secrets including a number of items, and the $94,000 award was for injury resulting from use of proprietary information relating to expansion machine design, but $15,000 award could have been for any other financial loss suffered from loss of any other trade secret.

Cases that cite this headnote

**[8]     Appeal and Error**  ⌐  In Proceedings Before Trial or Hearing

Tubing company's former employees waived on appellate review argument that trial court abused its discretion in denying tubing company's motion for continuance, in action by tubing company against former employees and their competitor company, when they failed to join in motion; former employees merely stated that they did not oppose motion, and not opposing motion was not the same thing as joining in motion. Rules App.Proc., Rule 33.1(a); Rules of Evid., Rule 103(a)(1).

Cases that cite this headnote

**[9]     Labor and Employment**  ⌐  Particular Trade Secrets or Information Protected

Tubing company's former employee, who formed competitor company, could be liable to tubing company for breach of fiduciary duty, even though he was at-will employee and was free to make proper preparations to compete with tubing company while still employed with it, if former employee used tubing company's confidential and proprietary information in his preparations for starting a competitor company.

Cases that cite this headnote

**[10]     Conspiracy**  ⌐  Damage caused

In action by tubing company against two former employees and their competitor company for breach of fiduciary duty, one former employee and competitor company could not be jointly and severally liable through conspiracy for damages caused by other employee's breach of fiduciary duty, absent a finding on the amount of damages caused by the conspiracy.

Cases that cite this headnote

From the 367th District Court of Denton County, Trial Court No. 2011–50408–367. Margaret Barnes, Judge.

WestlawNext © 2015 Thomson Reuters. No claim to original U.S. Government Works.

**Attorneys and Law Firms**

R. William Wood, Grace Weatherly, Jesse Cromwell Wood, Thacker & Weatherly, P.C., Denton, TX, for Appellant.

Virginia Hammerle, Craig M. Price, Hammerle Finley Law Firm, Lewisville, TX, for Appellee.

PANEL: McCOY, MEIER, and GABRIEL, JJ.

## MEMORANDUM OPINION [1]

LEE GABRIEL, Justice.

**\*1** Appellants Heat Shrink Innovations, LLC, Kevin Wolfe, and Deborah Wolfe appeal the trial court's judgment against them and in favor of appellee Medical Extrusion Technologies–Texas, Inc., a Texas corporation (METT) for misappropriation of trade secrets, breach of fiduciary duty, and conspiracy. We modify the trial court's judgment and affirm the judgment as modified.

### Background Facts

Tom Bauer operated a company called Medical Extrusion Technologies, Inc. in California that manufactured tubing used in medical devices such as catheters. The tubing is made of fluorinated ethylene propylene (FEP) resin that goes through a two-step process using two machines: an extruder and an expander. In very simple terms, the FEP is first melted and "extruded" through the extrusion equipment to create the tubing, and then the tubing is "expanded" using a heat process in the expansion equipment.

Bauer met Kevin Wolfe [2] in 2002 or 2003 when Wolfe sold machine parts for extrusion equipment. Sometime in 2004 or 2005, Wolfe suggested that he and Bauer create a tubing manufacturing company in Texas. The exact agreement between Wolfe and Bauer is unclear, but it is undisputed that Bauer and his wife, Rikki, formed the corporation, METT, in 2006 and purchased a building in Lewisville to house the operation. Bauer and Rikki were the sole officers and shareholders of METT. Wolfe worked as METT's manager. Wolfe did not supply any capital, but Bauer testified that Wolfe "would have a vested interest after several years of working at the business that could only be realized at the time we would sell the business."Wolfe testified that he believed he was supposed to receive a 10% ownership interest after three years, another 10% after four years, and after five years, he was to have a 30% interest in the company.

Bauer also hired Deborah as an office manager. Neither Wolfe nor Deborah signed a noncompete or nondisclosure agreement. METT provided an employee handbook that stated that it was "not an employment contract and [was] not intended to create contractual obligations of any kind."The handbook contained a nondisclosure section listing various types of confidential information including customer lists, financial information, proprietary production processes, technological prototypes, and tooling design concepts. The handbook stated, "Employees or former employees of [METT] may be subject to legal action for disclosing of confidential and/or proprietary information including but not limited to the above examples."

Wolfe and a consultant named Scott Steele created the concept for METT's expander machine based upon similar principles used in the expanders in Bauer's California company and Wolfe's former employer, Parker TexLoc. Wolfe testified that he designed the concept and provided instruction to Steele, who manufactured the machine. Steele made two more expanders for METT based off of the original design.

Wolfe was concerned that he did not have some form of a written contract with METT, and he spoke with Bauer about his concern in 2005. Bauer consulted with a law firm about an agreement, but he did not draft one at that time. It was not until December 2010, after Bauer heard of an incident in which Wolfe had "an outburst" in front of a new employee over dinner

regarding his lack of a written agreement, that Bauer drafted a contract and offered it to Wolfe. Wolfe told Bauer he would not accept the contract as written. The two had no further conversations about a written agreement.

**\*2** Beginning in early 2010, while still employed at METT, Wolfe started seeking investors to start a company to compete against METT. Wolfe's friend Terry Upchurch agreed to supply the initial capital for Wolfe's company. Wolfe contacted METT's customer Creganna–Tactx Medical and asked if it would be interested in changing suppliers. Creganna's representative, Brent Anderson, agreed and supplied a letter stating that Creganna would transfer its business to Wolfe's company. Anderson also agreed to invest in Wolfe's company.

In late 2010, Wolfe hired a mechanical engineer named Robert Terzini to design expander machines for his new company and Allen Meyer to fabricate the machines. Without Bauer's knowledge, Wolfe brought Terzini and Meyer to METT's Lewisville facility to look at METT's expanders as examples of machines that Wolfe wanted to build.

Wolfe incorporated Heat Shrink in February 2011. In April 2011, Wolfe and Deborah resigned from METT. Heat Shrink's first expander was completed in September 2011, and the company began filling customer purchase orders in October 2011. Heat Shrink used the same type of FEP resin that METT used. There was a limited amount of resin product available to purchase, and when the manufacturer could not fill METT's purchase requests, Bauer blamed Heat Shrink.

METT sued the Wolfes and Heat Shrink for misappropriation of trade secrets, breach of fiduciary duty, violations of the Texas Theft Liability Act, unfair competition, unjust enrichment, tortious interference with business relationships, civil conspiracy, and conversion. [3] Bauer also sought a temporary restraining order and temporary and permanent injunctive relief.

A jury found that Heat Shrink and Wolfe had misappropriated METT's trade secrets, that Wolfe had breached his fiduciary duty to METT, that Heat Shrink had knowingly participated in Wolfe's breach of fiduciary duty, and that Wolfe, Deborah, and Heat Shrink had conspired to damage METT. They awarded METT $15,000 in damages for misappropriation of trade secrets, $600,000 in past lost profits and $94,000 for the cost of the expander machines for breach of fiduciary duty, and $1,000 in exemplary damages. On April 10, 2012, the trial court entered a final judgment on the jury's verdict stating that Heat Shrink and the Wolfes were jointly and severally liable to METT for $694,000 in damages, that Heat Shrink was solely liable for $15,000 in damages, and that Wolfe was liable for $1,000 in exemplary damages. The judgment also permanently enjoined Wolfe and Heat Shrink from "soliciting FEP heat shrink tubing business from, or providing FEP heat shrink tubing to" a list of METT's customers.

Heat Shrink filed motions for new trial and to modify the judgment, which sought to lift the permanent injunction. After a hearing on the motions, the trial court granted Heat Shrink's motion for new trial. It then amended its order, stating, "The Court's grant of a new trial extends solely to the damage question 6(a) of the Charge as answered by the Jury; the remainder of the Judgment entered April 10, 2012 is unaffected."Question 6(a) of the jury charge asked what amount of past lost profits METT had sustained.

**\*3** METT filed a motion to enter an amended final judgment, seeking a judgment awarding it all of the other damages the jury had awarded (excluding the past lost profits for which the trial court had granted a new trial) and the permanent injunctive relief. It also filed a motion to sever the issue of lost profit damages from the case. The trial court filed an order vacating its orders for new trial and reinstating the original final judgment of April 10, 2012. Heat Shrink and the Wolfes then filed this appeal.

## Discussion

### I. Complete record

**[1]** Before we address the appellants' issues, we must first address METT's contention that the appellants did not provide this court with a complete record and therefore "all of [the a]ppellants' issues should not be considered and should be denied."

Heat Shrink Innovations, LLC v. Medical Extrusion..., Not Reported in...

2014 WL 5307191, 2014 IER Cases 170,129

During the trial, METT presented testimony from Brent Anderson, manager of Creganna, in the form of a videotaped deposition. The court reporter asked whether any party requested that she make a contemporaneous record of the testimony, and Heat Shrink and METT both waived the making of the record. [4] METT did not state on the record what sections of the deposition it showed the jury. Heat Shrink also read portions of Anderson's testimony and stated that it would "provide this part in writing also to the court reporter." There is no copy of Anderson's testimony in the record.

In November 2013, Heat Shrink sent a letter to the court reporter asking that a supplemental reporter's record be made containing the "omitted" Anderson testimony. The letter contained a copy of the deposition with 787 lines highlighted that Heat Shrink stated were played or read to the jury. METT filed a motion to strike the supplemental record, which we denied as moot because no supplemental record had been filed at the time.

In December 2013, Heat Shrink filed in the trial court a document entitled "Deposition Transcript of Brent Anderson Presented to the Jury on December 14, 2011." It again contained, as an exhibit, excerpts from Anderson's deposition that Heat Shrink claims were shown to the jury. METT filed a motion to strike this supplemental record, which we granted.

METT argues that because Anderson's testimony does not appear in the record, we must presume that the testimony supports the judgment. *See Prather v. McNally,* 757 S.W.2d 124, 125 (Tex.App.-Dallas 1988, no writ) (addressing former rule of appellate procedure 53(d)); *see also* Tex.R.App. P. 34.6(c), cmt. (stating that former rules 53(b), (d), and (e) were merged into rule 34.6(c)). Current rule 34.6(c) applies when the appellant requests a partial reporter's record. *See* Tex.R.App. P. 34.6(c)(1) (explaining the effect of requesting a partial record on the appellant's issues on appeal). Heat Shrink requested and received the complete reporter's record in this case. Rule 34.6(c) is therefore inapplicable. *See W & F Transp. Inc. v. Wilheim,* 208 S.W.3d 32, 39–40 (Tex.App.-Houston [14th Dist.] 2006, no pet.) ("The omitted material simply did not exist to be included in the record because the trial court had dismissed the court reporter. This situation differs markedly from that contemplated by Rule 34.6(c), in which one party designates and submits only certain portions of an existing reporter's record....").

**\*4** Heat Shrink has attempted a number of ways to get the testimony into the record after the fact. But nothing in our rules allows for the creation of a new trial court record. *See Gerdes v. Marion State Bank,* 774 S.W.2d 63, 65 (Tex.App.-San Antonio 1989, writ denied) ("[A]fter an appeal has been perfected, the trial court may not change the record that existed at the time the judgment was granted."); *see also Richards v. Comm'n for Lawyer Discipline,* 35 S.W.3d 243, 251 (Tex.App.-Houston [14th Dist.] 2000, no pet.) ("To allow supplementation at this late date would create a new trial court record."). The parties failed to note on the record what portions of the testimony were heard by the jury.

Parties are not required to have a contemporaneous record made every time deposition testimony is submitted into evidence. *See* Tex.R.App. P. 13.1(a) (stating that a court reporter does not have to make a record of a proceeding when excused by agreement of the parties). However, parties must exercise diligence in ensuring that a sufficient record is before the court on appeal. *See Piotrowski v. Minns,* 873 S.W.2d 368, 370 (Tex.1993) ("At every stage of the proceedings in the trial court, litigants must exercise some diligence to ensure that a record of any error will be available in the event that an appeal will be necessary."). In this case, the parties agreed to forego a contemporaneous record with the apparent intention of providing the court reporter with the deposition transcript of the sections presented to the jury. Their failure to see that the transcripts made it into the record leaves this court with a complete yet insufficient record to review. *See Michiana Easy Livin' Country, Inc. v. Holten,* 168 S.W.3d 777, 783 (Tex.2005) ("If ... an evidentiary hearing took place in open court, then a complaining party must present a record of that hearing to establish harmful error.").

The missing Anderson testimony does not destroy the appellants' ability to appeal as METT suggests. However, with an insufficient record of the evidence presented at trial, we are not in a position to evaluate the appellants' challenges to the sufficiency of the evidence, and we must overrule those parts of the appellants' issues. *See Travelers Indem. Co. of Rhode Island v. Starkey,* 157 S.W.3d 899, 904–05 (Tex.App.-Dallas 2005, pet. denied) (overruling appellant's sufficiency challenges when

Heat Shrink Innovations, LLC v. Medical Extrusion..., Not Reported in...

2014 WL 5307191, 2014 IER Cases 170,129

an exhibit on which the trial court relied was not included in the appellate record). We will review those arguments that do not involve evidentiary evaluations.

## II. Past lost profits

 **[2]**    In their first issue, the appellants argue that the trial court erred by awarding METT damages for past lost profits. They argue that METT failed to disclose its damages calculation. Prior to trial, Heat Shrink filed a motion in limine seeking to prohibit METT from bringing before the jury "[a]ny calculation of [its] alleged damages or attorneys' fees, because the same has not been disclosed to Defendants as required by Tex.R. Civ. P. 194.2(d)." *See* Tex.R. Civ. P. 194.2(d) ("A party may request disclosure of ... the amount and any method of calculating economic damages."). Heat Shrink attached to its motion METT's fourth supplemental response to its request for disclosures under rule 194.2(d). METT's response stated,

> **\*5** Plaintiff anticipates that its damages model will include amounts for lost profits in the past and in the future, as well as attorneys' fees on some causes of action and exemplary damages on other causes of action. Plaintiff has lost approximately two-thirds of its business from its biggest customer, Creganna–Tactx, as well as significant work from other customers, and the value of the company is considerably less than it was before Defendants' actions. Plaintiff also seeks to recover damages for the expenses incurred by it in creating innovations to its expansion machines, which have been copied by Defendants or at the Defendants' behest by nonparties....

At the hearing on the motion in limine, Heat Shrink again argued that METT had not disclosed its damages calculation and pointed out that "the only thing they've disclosed is cost approximating in excess of $150,000 for creating [i]nnovations to its expansion machines." The trial court asked METT, "To the extent that 194.2(d) requests specifically the amount, even assuming that the method of calculating economic damages, if that's in there, I'll say, or the explanation of economic damages is kind of how it reads, other than that $150,000 figure, where is the amount?" METT's counsel responded, "I don't think there's an amount in there other than the $150,000." METT's counsel noted that in Bauer's deposition, he "talk[ed] about the gross sales being 5.5 million, but I—I don't think that gets to the calculation of actual damages that we're seeking." The trial court first granted the motion as to economic damages, but then after a discussion on attorneys' fees, stated that the portion of the motion pertaining to economic damages was denied and that the parties must approach the bench before "any testimony as to matters not set forth in the request for disclosures or the supplemental responses to the request for disclosure[s]."

During trial, METT tried to elicit testimony from Bauer regarding how much profit METT had lost from former customers, and Heat Shrink objected. The trial court held another hearing outside the presence of the jury regarding what testimony on damages could be elicited. METT again pointed to the gross sales amount of $5.5 million and to Bauer's deposition in which he stated that his profit margin was fifty percent. At the end of the hearing, the trial judge said,

> All right. I'm not sure how clear this will be, but my intention is to allow the Plaintiff to elicit responses limited solely to the response made under 194.2(d) of the fourth supplemental response to Defendant's request for disclosure. Also, under 193.5, allowing supplementation by methods not solely by way of disclosure, only those statements made in the deposition.

> For example, there not being any calculation, any method at all regarding, I'll say, net lost profits—maybe profits itself assumes net—that which was not provided, supplemented, or responded to, or the answer was no[t] in the deposition, and further not supplemented by way of the fourth amended request for disclosure will not be permitted.

 **\*6** Later during trial, Bauer testified that he had not made any calculation of lost profits. When asked what damages METT sought against Heat Shrink and the Wolfes, Bauer said, "It would be the diminished sales of Creganna–Tactx."

The amount of lost profits must be shown by competent evidence with reasonable certainty. *Holt Atherton Indus., Inc. v. Heine,* 835 S.W.2d 80, 84 (Tex.1992). "What constitutes reasonably certain evidence of lost profits is a fact intensive determination. At a minimum, opinions or estimates of lost profits must be based on objective facts, figures, or data from which the amount of lost

Heat Shrink Innovations, LLC v. Medical Extrusion..., Not Reported in...

2014 WL 5307191, 2014 IER Cases 170,129

profits can be ascertained."*Id.*"The plaintiff bears the burden of providing evidence supporting a single complete calculation of lost profits, which may often require certain credits and expenses."*ERI Consulting Eng'rs, Inc. v. Swinnea,* 318 S.W.3d 867, 878 (Tex.2010). Further,

> A party who fails to make, amend, or supplement a discovery response in a timely manner may not introduce in evidence the material or information that was not timely disclosed ..., unless the court finds that: (1) there was good cause for the failure to timely make, amend, or supplement the discovery response; or (2) the failure to timely make, amend, or supplement the discovery response will not unfairly surprise or unfairly prejudice the other parties.

Tex.R. Civ. P. 193.6(a).

METT did not provide the appellants with a "single complete calculation of lost profits."It only provided evidence of lost sales, which is not the same thing. *See Holt Atherton,* 835 S.W.2d at 84 ("[L]ost income is not the correct measure of damages."); *Kellmann v. Workstation Integrations, Inc.,* 332 S.W.3d 679, 685 (Tex.App.-Houston [14th Dist.] 2010, no pet.) (holding that evidence of gross revenue or gross profits, rather than net revenue, did not establish lost profits). During trial, it pointed to two separate sections of Bauer's deposition and suggested that Heat Shrink was responsible for putting the two answers together and concluding that they formed METT's damage model. It was not the appellants' burden, but METT's. *See ERI Consulting,* 318 S.W.3d at 878. METT did not show why its failure to provide the calculation was not unfair surprise or prejudice to the appellants. *See*Tex.R. Civ. P. 193.6(a); *Miller v. Kennedy & Minshew, Prof'l Corp.,* 142 S.W.3d 325, 348 (Tex.App.-Fort Worth 2003, pet. denied) ("The burden of establishing good cause or lack of unfair prejudice or surprise is on the party seeking to call the witness, and the trial court's finding of good cause or lack of prejudice or surprise must be supported by the record."). Because METT did not provide a single complete calculation of lost profits as Heat Shrink had requested, it was prohibited from introducing evidence on lost profits. *See*Tex.R. Civ. P. 193.6(a). Because any evidence of lost profits admitted was in error,[5] the award of lost profits predicated on such evidence was likewise in error. We therefore sustain the appellants' first issue.

### III. Standing

**\*7** **[3]** In their second issue, the appellants argue that METT lacked standing to recover damages for the costs of the expansion machine because Medical Extrusion Technologies, Inc. (the California company) paid for the machine. To have standing, a plaintiff must be personally aggrieved, and his alleged injury must be concrete and particularized, actual or imminent, and not hypothetical. *DaimlerChrysler Corp. v. Inman,* 252 S.W.3d 299, 304–05 (Tex.2008). Jury question 6 asked what sum of money would fairly and reasonably compensate METT for damages it suffered from Wolfe's breach of his fiduciary duty to METT. Subsection (c) asked for the amount of damages METT suffered for the "[o]riginal cost to [METT] of the expansion machine(s) that [Heat Shrink] owns and that were based on [METT's] design, if any."The appellants argue that METT was not personally aggrieved because it did not pay for the development or manufacture of the machines.

A party may be personally aggrieved if it has a legal or equitable interest in the controversy. *See Goswami v. Metro. Sav. & Loan Ass'n,* 751 S.W.2d 487, 489 (Tex.1988) (holding that plaintiff had standing to contest sale of property in which he had an equitable interest); *$574.37 U.S. Coin & Currency v. State,* No. 02–06–00434–CV, 2008 WL 623793, at \*6 (Tex.App.-Fort Worth Mar. 6, 2008, no pet.)(mem.op.) (holding that although vehicle was owned by another person, plaintiff had equitable interest in truck to confer standing to contest forfeiture); *First Nat. Bank of El Campo, TX v. Buss,* 143 S.W.3d 915, 922 (Tex.App.-Corpus Christi 2004, pet. denied) (noting that a person in possession of a vehicle who is the intended owner of the vehicle has an equitable possessory right in the vehicle even if that person is not named on the vehicle's title). The appellants do not challenge that the machines are in METT's possession for its exclusive use and thus have not challenged whether METT has an equitable interest in them such that it would confer standing. Because METT has a legal or equitable interest in the expander machines, it has standing to pursue its claim against the appellants. We overrule the appellants' second issue.

### IV. Trade secrets

In their third issue, the appellants argue that METT failed to prove that it owned any trade secrets. As this issue concerns the sufficiency of the evidence and because we cannot evaluate all of the evidence introduced at trial, we must overrule this issue. *See Starkey,* 157 S.W.3d at 904–05.

## V. Knowing participation

 **[4]**  In their fourth issue, the appellants argue that the trial court erred by finding that Heat Shrink was jointly and severally liable for damages from Wolfe's breach of fiduciary duty through its knowing participation in Wolfe's breach. They contend that chapter 33 of the civil practice and remedies code requires the factfinder to determine the proportionate responsibility of all defendants for tort claims. *See*Tex. Civ. Prac. & Rem.Code Ann. §§ 33.001–.003 (West 2008).

 **\*8**  Knowing participation or aiding and abetting, while a distinct cause of action, is not actionable unless a third party commits a tort. *See W. Fork Advisors, LLC v. SunGard Consulting Servs., LLC,* 487 S.W.3d 917, 921 (Tex.App.-Dallas Aug. 5, 2014, no. pet. h.) ("[T]he supreme court has specifically dealt with aiding and abetting—as it has dealt with conspiracy—as a 'dependent' claim, which is 'premised on' an underlying tort. Thus, when an underlying tort fails, there can be [no] aiding and abetting claim related to that failed tort.") (citing *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.,* 51 S.W.3d 573, 582–83 (Tex.2001)). In this case, the pleadings alleged and the jury found that Heat Shrink's liability for knowing participation was wholly dependent upon and wholly derived from Wolfe's breach of his fiduciary duty to METT. *See Kastner v. Jenkens & Gilchrist, P.C.,* 231 S.W.3d 571, 580 (Tex.App.-Dallas 2007, no pet.)("When a third party knowingly participates in the breach of a fiduciary duty, the third party becomes a joint tortfeasor and is liable as such.") (citing *Kinzbach Tool Co. v. Corbett–Wallace Corp.,* 138 Tex. 565, 574, 160 S.W.2d 509, 513–14 (Tex.1942)). It is unnecessary to submit a question to the jury to apportion liability; Heat Shrink's liability is Wolfe's liability. *Cf. Rosell v. Ctr. W. Motor Stages,* 89 S.W.3d 643, 656–57 (Tex.App.-Dallas 2002, pet. denied) (noting in the negligent entrustment and negligent hiring context that "the owner/employer is liable for the acts of the driver, and the degree of negligence of the owner/employer is of no consequence"). We therefore cannot say that the trial court erred by failing to apportion liability.

The remainder of the appellants' fourth issue challenges the sufficiency of the evidence, and thus, we do not address it. *See Starkey,* 157 S.W.3d at 904–05. We therefore overrule the appellants' fourth issue.

## VI. Permanent injunction

In their fifth issue, the appellants argue that the trial court erred by granting a permanent injunction. Specifically, they argue that METT had an adequate remedy at law, that the permanent injunction is too vague, and that it is an impermissible prior restraint on speech.

To be entitled to a permanent injunction, the party seeking the injunction must plead and prove (1) a wrongful act, (2) imminent harm, (3) irreparable injury, and (4) absence of an adequate remedy at law. *See Indian Beach Prop. Owners Ass'n v. Linden,* 222 S.W.3d 682, 690 (Tex.App.-Houston [1st Dist.] 2007, no pet.). A remedy is "adequate," for purposes of determining entitlement to an injunction, when it is complete, practical, and efficient to the prompt administration of justice. *Matagorda Cnty. Hosp. Dist. v. City of Palacios,* 47 S.W.3d 96, 103 (Tex.App.-Corpus Christi 2001, no pet.). An injunction must be as definite, clear, and precise as possible and, when practicable, it should inform the defendant of the acts he is restrained from doing without calling on him for inferences or conclusions about which persons might well differ and without leaving anything for further trial. *Webb v. Glenbrook Owners Ass'n, Inc.,* 298 S.W.3d 374, 384 (Tex.App.-Dallas 2009, no pet.); *see*Tex.R. Civ. P. 683. An injunction should be broad enough to prevent a repetition of the "evil" sought to be corrected, but not so broad as to enjoin a defendant from lawful activities. *Webb,* 298 S.W.3d at 384. A trial court abuses its discretion by granting an injunction when it misapplies the law to established facts or when the evidence does not reasonably support the determination or the existence of a probable right of recovery or probable injury. *See Marketshare Telecom, L.L.C. v. Ericsson, Inc.,* 198 S.W.3d 908, 916 (Tex.App.-Dallas 2006, no pet.).

**\*9** "As a general rule, in the absence of an enforceable agreement not to compete, an employer is not entitled to an injunction preventing a former employee from soliciting the employer's clients."*Rugen v. Interactive Bus. Sys., Inc.,* 864 S.W.2d 548, 551 (Tex.App.-Dallas 1993, no writ); *see also Gonzales v. Zamora,* 791 S.W.2d 258, 268 (Tex.App.-Corpus Christi 1990, no writ) ("An employer is not entitled to an injunction preventing a former employee from soliciting employer's clientele as it existed on the day of employee's termination of employment, where there is no agreement not to compete."). However, a former employee, even without a written contract, cannot use the former employer's confidential information or trade secrets for his own advantage to the detriment of his former employer. *Rugen,* 864 S.W.2d at 551.

 **[5]**    The injunction in this case does not bar Wolfe and Heat Shrink from using METT's confidential information; it permanently enjoins Wolfe and Heat Shrink from "soliciting FEP heat shrink tubing business from, or providing FEP heat shrink tubing to" a list of METT's customers. The injunction in this case therefore enjoins a far broader range of activity than is proper or necessary to protect METT's interests and infringes on Wolfe's and Heat Shrink's right to compete. *See Miller Paper Co. v. Roberts Paper Co.,* 901 S.W.2d 593, 602 (Tex.App.-Amarillo 1995, no writ) (noting as important when upholding injunction that it allowed appellants to compete with former employer and only prohibited their use of employer's confidential information).

 **[6]**    But even assuming that the injunction was proper under the circumstances of this case, the terms of the injunction are too vague to be enforceable. The injunction prohibits sales to a list of names, but provides no other identifying information. Some names appear to be companies, but others are names of individual persons. For example, the injunction enjoins sales to "Julie McCreary" and "Richard Wolf." The list also includes "Farm" and "Calypso" with no further clues to their identities. That cannot be said to be "as definite, clear, and precise as possible."*See Computek Computer & Office Supplies, Inc. v. Walton,* 156 S.W.3d 217, 222–23 (Tex.App.-Dallas 2005, no pet.)(holding that injunction lacked specificity when it did not list clients that Computek could not contact and stating that the lack of specificity could not be cured "by any knowledge Computek may have outside the permanent injunction"). The injunction is therefore impermissibly vague. We sustain the appellants' fifth issue.

## VII. Double recovery

 **[7]**    In their sixth issue, the appellants argue that the trial court's final judgment resulted in an improper double recovery for METT. A double recovery exists when a plaintiff obtains more than one recovery for the same injury. *See Stewart Title Guar. Co. v. Sterling,* 822 S.W.2d 1, 7 (Tex.1991).

The trial court awarded METT $15,000 for misappropriation of its trade secrets and $94,000 for the cost of the expansion machines for breach of fiduciary duty. [6] The appellants argue that the same course of conduct forms the basis for all of METT's causes of action against them—that is, that Wolfe and Heat Shrink used METT's confidential and proprietary information to METT's financial detriment. However, the appellants do not explain how both causes of action address the same financial injury. In its petition, METT identified its trade secrets and confidential and proprietary information as including "computer programs and raw material/labor planning requirements, customer lists, financial information, pending projects and proposals, proprietary production processes, production log information, technological data, technological prototypes, internal business payroll and employee contact information."The award of $94,000 was clearly for the injury resulting from using METT's confidential or proprietary information relating to the expander design. But the $15,000 award could have been for any other financial loss that METT suffered from the loss of any other of its trade secrets. We have stated that we cannot evaluate all of the evidence introduced at trial to determine what, if any, trade secrets METT proved it owned. We therefore overrule this issue. *See Starkey,* 157 S.W.3d at 904–05.

## VIII. Motion to withdraw

 **\*10** **[8]**    In their seventh issue, the appellants argue that the trial court erred by granting the Wolfes' attorney's motion to withdraw and by denying a continuance.

The Wolfes' trial counsel filed a motion to withdraw on November 3, 2011. The trial court heard the motion on December 1, 2011. At the same hearing, the court heard METT's motion for continuance. METT argued that it had been unable to take the

defendants' depositions.[7] Heat Shrink opposed the motion for continuance on a number of grounds. It argued that it did not receive proper notice, that it violated the trial court's standing orders, that the motion did not meet the requirements of rule 252, and that this was METT's second request for a continuance. *See*Tex.R. Civ. P. 21, 252. The trial court granted the Wolfes' counsel's motion to withdraw, stating that counsel could withdraw after he filed a response to METT's pending motion for summary judgment and represented the Wolfes at their upcoming depositions. It denied METT's motion for continuance.

On appeal, the Wolfes argue that they joined in METT's motion for continuance. The record shows only that the Wolfes stated that they did not oppose the motion and that they would suffer no harm or prejudice if it were granted.[8] To preserve a complaint for appellate review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling, if they are not apparent from the context of the request, objection, or motion. Tex.R.App. P. 33.1(a); *see also*Tex.R. Evid. 103(a)(1). If a party fails to do this, error is not preserved, and the complaint is waived. *Bushell v. Dean,* 803 S.W.2d 711, 712 (Tex.1991) (op. on reh'g).

Not opposing a motion is not the same thing as joining the motion and requesting relief. The Wolfes did not request a continuance in the trial court and thus waived the issue. *See Bushell,* 803 S.W.2d at 712; *Addicks v. Sickel,* No. 02–03–00218–CV, 2005 WL 737419, at *3 (Tex.App.-Fort Worth Mar.31, 2005, no pet.)(mem.op.) (holding that appellant waived complaint that trial was set by failing to seek a continuance or otherwise affording the trial court an opportunity to grant relief). We overrule their seventh issue.

## IX. Breach of fiduciary duty

 **[9]**   In their eighth issue, the appellants argue that METT failed to prove that Wolfe violated a fiduciary duty to it. The appellants argue that at-will employees owe no fiduciary duty to their employers as a matter of law and that Wolfe, as an at-will employee, was free to make preparations to compete with METT while still employed by it.

The issue is not whether an at-will employee may plan to compete with his employer while still employed with it, as that is clear. *See Abetter Trucking Co. v. Arizpe,* 113 S.W.3d 503, 510 (Tex.App.-Houston [1st Dist.] 2003, no pet.)("An at-will employee may properly plan to compete with his employer, and may take active steps to do so while still employed."). The issue is what constitutes "proper" planning and whether improper planning by an employee violates a fiduciary duty to his employer. *See Johnson v. Brewer & Pritchard, P.C.,* 73 S.W.3d 193, 202 (Tex.2002) (noting that there are "certain limitations on the conduct of an employee who plans to compete with his employer") (quoting *Augat, Inc. v. Aegis, Inc.,* 409 Mass. 165, 565 N.E.2d 415, 419 (1991)). The agency relationship between employer and employee creates certain fiduciary duties. *See id.* at 201; *Miller Paper,* 901 S.W.2d at 600 ("Upon the formation of an employment relationship certain duties arise apart from any written contract."). Those duties include the employee's obligation not to use confidential or proprietary information acquired during the relationship in a manner adverse to the employer, even after the employment relationship ends. *See Cuidado Casero Home Health of El Paso, Inc. v. Ayuda Home Health Care Servs., LLC,* 404 S.W.3d 737, 753 (Tex.App.-El Paso 2013, no pet.)("[A] breach of fiduciary duty can be based on an employee's use of an employer's confidential or proprietary information in a manner adverse to the employer."); *RenewData Corp. v. Strickler,* No. 03–05–00273–CV, 2006 WL 504998, at *12 (Tex.App.-Austin Mar.3, 2006, no pet.)(mem.op.) (discussing employee's "post-termination fiduciary duty" not to use employer's confidential information); *Miller Paper,* 901 S.W.2d at 600 (noting that employee's duty not to use confidential information against employer "survives termination of employment"). This duty is imposed upon employees even when there is no contractual obligation. *Fox v. Tropical Warehouses, Inc.,* 121 S.W.3d 853, 858 (Tex.App.-Fort Worth 2003, no pet.)("Even in the absence of an enforceable nondisclosure agreement, a former employee may not use confidential information or trade secrets the employee learned in the course of his employment for his own advantage and to the detriment of his employer.").

 **\*11**   Thus, if Wolfe used METT's confidential and proprietary information in his preparations for starting Heat Shrink, he went beyond the bounds of proper planning to compete and breached his fiduciary duty to METT. *See Cuidado Casero,* 404 S.W.3d at 753 (reversing summary judgment in favor of employee on employer's breach-of-fiduciary-duty claim based on employee's use of confidential or proprietary information); *RenewData,* 2006 WL 504998, at *12 (upholding jury's finding that

former employee breached his post-termination fiduciary duty to former employer by disclosing former employer's confidential information); *Miller Paper,* 901 S.W.2d at 602 (noting that former employee was free to compete with former employer "but not with the material developed by or on behalf of" former employer). Whether Wolfe did violate his fiduciary duty to METT was a fact issue for the jury to decide. *Abetter Trucking Co.,* 113 S.W.3d at 508 ("At a trial on the merits, whether a party has breached a fiduciary duty is not decided as a matter of law; it is, instead, a fact issue for the jury's determination."). Because we cannot evaluate the sufficiency of the evidence supporting the jury's finding that Wolfe breached his fiduciary duty, we overrule the appellants' eighth issue. *See Starkey,* 157 S.W.3d at 904–05.

### IX. Conspiracy

 **[10]**    In their ninth issue, the appellants argue that the trial court erred by finding that Deborah and Heat Shrink were jointly and severally liable through conspiracy for damages from Wolfe's breach of fiduciary duty.

The essential elements of a civil conspiracy are "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result."*Cotten v. Weatherford Bancshares, Inc.,* 187 S.W.3d 687, 701 (Tex.App.-Fort Worth 2006, pet. denied). Question No. 14 of the jury charge asked,

> Was KEVIN WOLFE part of a conspiracy that damaged [METT]?

> To be part of a conspiracy, KEVIN WOLFE and another person or persons or entity must have had knowledge of, agreed to, and intended a common objective or course of action that resulted in the damages to [METT]. One or more persons involved in the conspiracy must have performed some act or acts to further the conspiracy.

Question Nos. 15 and 16 asked the same question about Deborah and Heat Shrink. There was no separate question on damages resulting from the conspiracy.

In one of their arguments under this issue, the appellants claim that METT failed to establish a finding that it suffered damages as a result of the conspiracy. That is, damages "are not presumed from the existence of a conspiracy."*Hart v. Moore,* 952 S.W.2d 90, 98 (Tex.App.-Amarillo 1997, pet. denied); *see Belz v. Belz,* 667 S.W.2d 240, 243 (Tex.App.-Dallas 1984, writ ref'd n.r.e.) ("[T]he mere fact that the existence of a conspiracy is proved is not, in and of itself, a recoverable harm."). The damages proximately resulting from the conspiracy must be proven like any other element. *See ERI Consulting,* 318 S.W.3d at 881 (upholding take-nothing judgment on claim of conspiracy when the damages awarded could not be the proximate result of a conspiracy).

 ***12**   In this case, the appellants were found to be jointly and severally liable for the damages resulting from Wolfe's breach of fiduciary duty. However, "it does not automatically follow that whatever damages were caused by the [underlying tort] were also attributable to the 'conspiracy' the jury found."*THPD, Inc. v. Continental Imports, Inc.,* 260 S.W.3d 593, 605 (Tex.App.-Austin 2008, no pet.). Without a finding on the amount of damages caused by the conspiracy, METT failed to prove an essential element of its cause of action. *See Belz,* 667 S.W.2d at 243 ("[I]n order to recover a judgment for civil conspiracy there must be a finding of damages resulting from that conspiracy."). Joint and several liability for Wolfe's breach of fiduciary duty cannot be predicated on the conspiracy cause of action.

However, as discussed above, the jury found in a separate question that Heat Shrink knowingly participated in Wolfe's breach of his fiduciary duty to METT. Knowing participation is a separate ground supporting the imposition of joint and several liability on Heat Shrink for the damages resulting from Wolfe's breach. *See Kastner,* 231 S.W.3d at 580 ("When a third party knowingly participates in the breach of a fiduciary duty, the third party becomes a joint tortfeasor and is liable as such."). So although we sustain the appellants' ninth issue, it does not affect our reasoning under the appellants' fourth issue as to Heat Shrink.

## Conclusion

Having sustained the appellants' first issue, we reverse the award of $600,000 in lost profit damages and modify the trial court's award of $694,000 to $94,000. Having sustained the appellants' fifth issue, we dissolve the permanent injunction and modify the trial court's final judgment to omit the permanent injunction. Having sustained the appellants' ninth issue, we modify the trial court's judgment to omit Deborah Wolfe as liable for the $94,000 damage award. Having overruled the appellants' second, third, fourth, sixth, seventh, and eighth issues, we affirm the trial court's judgment as modified.

MEIER, J., filed a concurring and dissenting opinion.

### CONCURRING AND DISSENTING MEMORANDUM OPINION

BILL MEIER, Justice.

I respectfully disagree with the majority's disposition of the appellants' fifth issue. I would uphold the permanent injunction, and I dissent to that portion of the majority's opinion and judgment that dissolves the injunction. I concur with the remainder of the outcome in this case.

**Parallel Citations**

2014 IER Cases 170,129

Footnotes

1      *See*Tex.R.App. P. 47.4.

2      For clarity and convenience, we will refer to Kevin Wolfe as "Wolfe" and his wife, Deborah Wolfe, as "Deborah."

3      Bauer also sued the Wolfes for an unrelated loan of $7,400, which the Wolfes admitted they owed and from which they do not appeal. The Wolfes filed counterclaims against METT for fraud, promissory estoppel, and breach of oral contract. The trial court's final judgment ordered that the Wolfes take nothing on their counterclaims, and the Wolfes do not appeal that part of the judgment

4      Neither Wolfe nor Deborah made a statement on the record regarding the making of the record, but neither objected that a record was not made.

5      METT argues that the appellants did not object to some of Bauer's testimony on lost profits. The testimony to which METT points regards METT's lost sales, which we have already noted is not a proper calculation of lost profits. *See Kellmann,* 332 S.W.3d at 685.

6      The trial court also awarded $600,000 in lost profits for breach of fiduciary duty, which we have already held to be in error.

7      METT's motion for continuance does not appear in the record before us.

8      Regarding the motion to withdraw, Heat Shrink's attorney stated at the hearing, "My understanding is that the Wolfes oppose the motion. They're here today back in the back row (*indicating* ). We don't represent the Wolfes, but we do know that they oppose the motion because they sought counsel."

**End of Document**                    © 2015 Thomson Reuters. No claim to original U.S. Government Works.