**Affirmed and Memorandum Opinion filed January 9, 2020.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-17-00839-CV

---

### EDWIN K. HUNTER, Appellant

### V.

### PRESTON MARSHALL, Appellee

---

**On Appeal from Probate Court No. 4
Harris County, Texas
Trial Court Cause No. 365,053-401**

---

### MEMORANDUM OPINION

This appeal arises from the trial court's order signed September 29, 2017, denying appellant Edwin K. Hunter's special appearance. We affirm.

### BACKGROUND

In March of 2017, appellee Preston Marshall filed his fourth amended petition against appellant and Elaine T. Marshall, as Executor of the Estate of E. Pierce Marshall, Elaine T. Marshall, Individually, Elaine T. Marshall as Trustee of the EPM Marital Income Trust, Elaine T. Marshall as Trustee of the Testamentary Lead Trust,

Elaine T. Marshall as Trustee of the Harrier Trust for the Benefit of Preston L. Marshall, and Elaine T. Marshall, as Trustee of the Falcon Trust for the Benefit of Preston L. Marshall (collectively "Mrs. Marshall"). Appellee claimed Mrs. Marshall breached her fiduciary duties to appellee. Appellee further alleged Hunter "assisted, encouraged, and participated in Mrs. Marshall's breaches, knowing that his actions would facilitate or induce a breach of fiduciary duty and would be a breach of his own duties to Plaintiff."

Appellee alleged the following grounds for the trial court to assert jurisdiction over appellant:

> 28.    This Court has jurisdiction over Edwin Hunter because his misconduct occurred while he was acting as Mrs. Marshall's agent, individually and as Trustee and Executor. Mr. Hunter advised and informed Plaintiff twice in writing that his mother as Executor was placing Plaintiff in possession of the disclaimed shares. Plaintiff was never placed in possession of the disclaimed shares and has a right to an accounting of all Estate property, including any property or funds purportedly removed to Wyoming, pursuant to his status as a party to the Disclaimer and the representations of Mr. Hunter on behalf of the Executor and as attorney for the Executor and Plaintiff with respect to the Disclaimer. "When a third party knowingly participates in the breach of fiduciary duty, the third party becomes a joint tortfeasor and is liable as such." *Kastner v. Jenkens & Gilchrist*, 231 S.W.3d 571, 580 (Tex. App.—Dallas 2007, no pet.).

> 29.    Additionally, this Court may properly exercise jurisdiction over Edwin K. Hunter because Edwin Hunter routinely gave Plaintiff legal, business, tax, and estate planning advice in Texas; advises other clients in Texas; and has committed torts to others in this State.

Appellee's pleadings alleged the following facts relating to appellant:

**B. Mrs. Marshall's Refusal To Transfer Disclaimed Trof Shares**

. . .

> 77.    In 2014, Mrs. Marshall's lawyers represented to Plaintiff that he would be receiving the 12,811 disclaimed shares of Trof. In

2

April 2014, Mrs. Marshall's lawyers represented to Plaintiff—as a means of convincing Plaintiff to take a pay cut and demotion at the family's business MarOpCo—that Mrs. Marshall "intends to distribute from her late husband's estate 12,811 Trof non-voting shares" and that Plaintiff's "share of future income on the distributed shares will eclipse his current MarOpCo, Inc. compensation." Exhibit 37 (Trevino letter). Similarly, in June 2014, Defendant Edwin K. Hunter, the Marshall family's longtime lawyer and Mrs. Marshall's consiglieri, told Plaintiff that "[w]e are taking steps to place you and Pierce, Jr. in possession of the [Trof] units disclaimed by your mother." Exhibit 38 (*submitted in camera*).

78.    Despite the promise to deliver the disclaimed shares of Trof—future income from which would "eclipse" any prior compensation—the shares have not been distributed to Plaintiff. In fact, Edwin K. Hunter never intended to place Preston Marshall "in possession of" the Trof shares. Indeed, Hunter admitted that there were no shares to distribute. Exhibit 21 (Hunter Dep. Tr.) at 14-23. When questioned why Mrs. Marshall's lawyers were offering allegedly nonexistent shares to Plaintiff, Hunter flatly testified that the representations were incorrect. *Id*. at 23:11-24. Hunter stated that the representation "certainly wasn't, in fact, true." *Id*. Of course, this means that Hunter's own statement about the disclaimed shares "certainly wasn't, in fact, true" either.

. . .

### D.    Disparaging Remarks About Plaintiff to Charles Koch

83.    On April 6, 2015, Edwin Hunter, at Mrs. Marshall's direction, wrote a letter to Charles Koch, Chairman of Koch Industries, Inc., providing him with "information on recent changes in her succession plan together with the circumstances underlying those changes." Exhibit 43 (*submitted in camera*). The letter is 11 pages, but attaches over 200 pages of "exhibits," and amounts to a screed misrepresenting Plaintiffs actions, and attempting to portray him as a ne'er-do-well. Edwin Hunter's letter purports to describe Plaintiffs "emotion-driven desire to strike at his brother," attempted use of power not given to him, "interposing himself into appellate tax brief preparation," hiring a lawyer in Louisiana to harm Pierce, Jr., and "joining with one of his attorneys to surreptitiously record a confidential conversation." *Id*.

3

84. Edwin Hunter sent Mr. Koch a second letter on July 11, 2015. Exhibit 44 (*submitted in camera*). This time, he put further spin on Plaintiffs termination from MarOpCo, claiming for example that there was no support for his claim that he owed fiduciary duties to Chondriosome Stiftung. This letter included over 700 pages of "exhibits."

85. These letters serve no purpose but to disparage and defame Plaintiff, and to further retaliate against Plaintiff for his accounting demands, lawsuits to enforce his statutory rights, and general denial to be Edwin Hunter's puppet.

### E. Mrs. Marshall's Indemnification of Her Lawyers For Acts Against Plaintiff

86. In July 2014 and again in October or November 2014, Mrs. Marshall executed an irrevocable indemnification agreement ("Indemnity Agreement") with her attorneys, including Edwin K. Hunter, agreeing to "protect, make whole, hold harmless, and defend" those attorneys (and undisclosed others) for advice relating to, among other issues:

> the termination of Preston L. Marshall's employment with MarOpCo, shutting down and/or moving the Houston based offices of MarOpCo, and all open litigation matter to which the Defended Parties or a Defended Party may be providing advice to any of the Marshall Interests or their representatives.

Exhibit 45 (*submitted in camera*). Indeed, Edwin Hunter and his colleagues are ostensibly indemnified regardless of the basis of the action instituted against, "including whether it is founded in whole or part upon, or includes allegations of, the alleged fault, tort, negligence, gross negligence, malpractice, breach of fiduciary duty or duty of loyalty, or criminal conduct of a defended party." In other words, Mrs. Marshall has agreed to indemnify her lawyers for any misconduct—including criminal acts—directed at Plaintiff. Moreover, the Indemnity Agreement permits Mrs. Marshall to recover indemnity payments from Mr. Hunter and his law firm provided that neither Plaintiff nor his descendants benefit from the recovery.

Appellee's cause of action against appellant is set forth below:

### D. Aiding and Abetting Breach of Fiduciary Duty (Edwin

**Hunter)**

108.   Defendant Edwin Hunter has aided and abetted Mrs. Marshall's breaches of fiduciary duty. Mrs. Marshall unquestionably owed and breached fiduciary duties to Plaintiff. Edwin Hunter, as a lawyer admitted in Texas and practicing trust and estate law in Texas, undoubtedly understood and recognized that Mrs. Marshall's conduct constituted a breach of her fiduciary duties, and knowingly and intentionally provided substantial assistance and encouragement in the breaches of duty. Indeed, Edwin Hunter actively participated in Mrs. Marshall's breaches. Edwin Hunter's intentional assistance, encouragement, and participation was a substantial factor leading to Mrs. Marshall's breaches.

109.   Edwin Hunter is Mrs. Marshall's longtime counselor and has given Mrs. Marshall and the rest of the Marshall family legal advice for several years. He assisted in Mrs. Marshall's secret move of the Marital Trust to Wyoming and its merger into the Wyoming Trust. Edwin Hunter participated in the improper appointment of five co-trustees for the Harrier and Falcon Trusts—he or his law firm filed the paperwork in Calcasieu Parish, Louisiana as "conveyances." Edwin Hunter helped devise the excessive and unfair compensation formula that the wrongly-appointed Harrier and Falcon Co-Trustees would receive. Edwin Hunter wrote and compiled the lengthy, exhibit-laden letters sent to Charles Koch that disparaged Plaintiff.

110.   Furthermore, Mr. Hunter has represented Plaintiff and has acted as Plaintiff's lawyer in the past, meaning that Mr. Hunter's actions constitute a breach of his own fiduciary duties to Plaintiff.

On June 26, 2017, appellant filed a special appearance and motion to quash service. In his motion, appellant claimed he is a nonresident individual who does not have contacts with Texas sufficient to establish jurisdiction. In his affidavit, appellant averred:

- I am not a resident of Texas. Rather, I am a resident of Florida, although I split my time living between Florida and Utah.

- I have never owned, leased, rented or controlled any real or personal property in Texas.

- I have never maintained accounts at either savings or loan associations

5

or banks in Texas.

- Through my work as an attorney, I
    - do not operate a law office in Texas;
    - have not paid taxes to Texas;
    - have never owned any real property located in Texas;
    - do not have a registered agent for service of process in Texas; and
    - have never advertised in Texas.
- At all relevant times in this suit, I represented Mrs. Elaine T. Marshall, *not* Preston Marshall.
- I have not purposefully availed myself of the privileges and benefits of conducting business in Texas. And given my absence of contacts with Texas, it was not foreseeable to me that I would ever be haled into a Texas court to defend myself.
- Litigating this dispute in Texas would place a significant burden on me. I split my time living between Florida and Utah. I have never lived or worked in Texas. Thus, I would face a large, extraordinary expense to travel to Texas for personal appearances in this matter.

Appellee opposed the special appearance and both parties briefed the issue to the trial court. The trial court denied the special appearance on September 29, 2017, following a hearing on September 25, 2017.

Appellant timely requested findings of fact and conclusions of law and filed a notice of appeal. On November 22, 2017, the trial court filed findings of fact and conclusions of law (footnotes omitted) as follows:

1. Hunter is a licensed attorney in Texas.

2. Hunter has sent thousands of letters and emails to Texas residents, including Preston Marshall ("Preston").

3. Hunter served as the Marshall family's primary attorney in providing tax advice to preserve and transfer the Marshall family's assets and businesses.

4. Hunter has advised the Marshall family for over 30 years.

6

Hunter has represented J. Howard Marshall, II, Eleanor Pierce Stevens, E. Pierce Marshall, Sr., Elaine T. Marshall ("Mrs. Marshall"), E. Pierce Marshall, Jr., and Preston Marshall regarding a wide variety of issues.

5.      Hunter provided counsel to the Marshall family, including Preston, in the Anna Nicole Smith litigation. The Anna Nicole Smith litigation was pending, in some form or another, from 1995 through July 14, 2015. *See Stern v. Marshall*, 471 S.W.3d 498 (Tex. App.— Houston [1st Dist.] 2015, no pet.).

6.      Hunter gave advice to the Marshall family about a dispute in the United States District Court for the Southern District of Texas (*United States of America v. Robert S. MacIntyre, Individually, and as Temporary Administrator of the Estate of James Howard Marshall II, et al.*). Hunter traveled to Texas to provide said advice, was involved in settlement negotiations with Texas counsel, and attended settlement meetings in Texas.

7.      As part of his representation of the Marshall family, Hunter engaged in several lengthy meetings in Texas with the Marshall family, including Preston.

8.      Hunter advised Preston personally regarding marital advice, tax repercussions, litigation strategy, wealth expansion, fiduciary duties and served as litigation counsel.

9.      Hunter and his law firm advised Preston, in Texas, about issues relating to:

- establishing various trusts for Preston's benefit;

- installment sales from entities Preston owns and was employed by in Texas;

- issues related to grantor-retained annuity trusts;

- estate planning and distributions issues related to Preston's and Pierce Jr.'s personal finances tied to entities they own, such as Trof, Ribosome, and various trusts; and

- detailed discussions with the Marshall family regarding the Disclaimer of Trof shares and other Marshall entity issues.

10.      Hunter informed Preston, in writing, that he represented everyone in the Marshall family. Hunter emphasized the importance of protecting his attorney-client privilege with Preston and the rest of the Marshall family. Attorneys for MarOpCo, Inc.—the Marshall family

company—have admitted that Hunter represents the entire Marshall family.

11. Hunter advised the Marshall family regarding the March 2007 Qualified Disclaimer.

12. Hunter has received millions of dollars in compensation for performing work for Texas clients. Hunter's work for Mrs. Marshall, yielded him over $700,000 in less than a year and a half, and he has represented the Marshall family for over 30 years.

13. Hunter & Blazier—Hunter's former law firm that also advised the Marshall family—also had a permanent office in Austin, Texas.

14. Hunter participated in the transfer of the assets of the EPM Marital Income Trust created under the Last Will and Testament of E. Pierce Marshall (the "Testamentary Marital Income Trust") to Wyoming.

15. Based at least in part on Hunter's advice, Mrs. Marshall created a new Wyoming Trust and merged the Testamentary Marital Income Trust into the Wyoming Trust. Then, she split the Wyoming Trust into the EPM/EPM Marital Income Trust and the PLM/EPM Marital Income Trust.

16. Hunter and employees at his law firm, Hunter, Hunter, and Sonnier, sent Preston letters promising that Mrs. Marshall would transfer shares of Trof, Inc. to Preston.

17. Hunter has admitted his representation about the transfer of Trof shares to Preston "certainly wasn't [sic], in fact, true."

18. On both April 6, 2015 and July 11, 2017, Hunter sent letters to Charles Koch. The letters concerned, among other things, the Wyoming Transactions at issue in this litigation. The letters stated that, among other things, Preston engaged in a "ruse," took "a self-dealing, ultra vires act," made a "petulant, ill-considered" request for an accounting, and engaged in "embezzlement."

19. Hunter received indemnity from Mrs. Marshall for writing the letters. The Defense and Indemnity Agreement (the "Indemnity Agreement") was executed in October and November 2014, and the Addendum to the Defense and Indemnity Agreement (the "Addendum") in August 2015 in Dallas, Texas. It states that Elaine and a number of Marshall Family Entities—including the Testamentary

Marital Income trust—agree to "protect, make whole, hold harmless, and defend" Hunter for his "drafting, preparation, gathering of information, contents, and all work relating to the letter and numerous exhibits from Edwin K. Hunter to Charles Koch dated July 11, 2015 and all matters relating to what is discussed therein . . . ." The Addendum further indemnified Hunter for "all projects that the Defended Parties or a Defended Party may [be] working on as of and/or before August 11, 2015 with regards to any decanting . . . ."

20.    Mr. Marshall created the Harrier Trust on May 5, 2006. Mr. Marshall also created the Falcon Trust on May 5, 2006. Mr. Marshall named Mrs. Marshall as the trustee of both the Harrier Trust and the Falcon Trust." By accepting appointment as trustee, Mrs. Marshall agreed "to be bound" by the terms of the Harrier and Falcon trust instruments. Both trust instruments provide:

> 6.2 **General Administration**. The following provisions shall govern the general administration of the trust.
>
> > A. **Trustee's Fees**. The Trustee shall be entitled to receive reasonable compensation for services actually rendered, which shall not exceed the customary charge imposed by banks or trust companies in the locality for discharging equivalent duties. The Trustee shall be entitled to reimbursement for reasonable expenses incurred and paid in the administration of the trust.

21.    The trust instruments contain no other provisions regarding trustee compensation.

22.    On December 6, 2016, Mrs. Marshall purported to appoint "Dr. Wayne S, [sic] Thompson Jr., Judge Lilynn Cutrer, Dr. Karen Aucoin, Pastor Edward Alexander and Adam P. Johnson to serve as Co-Trustees" of both the Harrier Trust and the Falcon Trust "effective upon their taking the oath of office." Mrs. Marshall asked Hunter and his law firm to choose the co-trustees based on particular criteria. According to Hunter, Mrs. Marshall delegated the task of identifying the co-trustees to him and his law firm.

23.    The appointment documents provide that:

> The appointment of these Co-Trustees is for a term that shall continue for the duration of the Trust and shall continue even should one or more of the Co-Trustees resign or otherwise cease

serving. Compensation for the Co-Trustees shall be determined by a formula divided by the number of Co-Trustees serving for that year and compensation shall be paid in quarterly installments or if, for whatever reason, quarterly installments are not able to be made then annually. The Co-Trustees shall divide a trustees' fee for each calendar year not to exceed forty percent (40%) of the gross trust receipts, less any principal distribution received from any trust, during that year. The fee shall equal to the sum of (1) 0.3% of (a) the calculation value, as defined below, of the trust's interest in the PLM/EPM Marital Income Trust and, (b) the fair market value of interests in Trof, Inc., or Ribosome, L.P. to the extent such interests have been distributed by the PLM/EPM Marital Income Trust to the trust, (2) 3% of the fair market value of all other assets, and (3) 5% of the gross trust receipts. For the purpose of this agreement values shall be determined as of December 31st of each year. The calculation value for the trust's interest in the PLM/EPM Marital Income Trust shall equal 60% of the fair market value of the trust's corpus adjusted to present value at a 6% per annum discount rate with an actuarial adjustment based on Mrs. Elaine T. Marshall's life expectancy as determined by the use of Life Table 90 CM as published by the United States Department of the Treasury. There shall be no compensation for the year 2016.

24. Hunter created the compensation scheme.

25. The Texas long-arm statute applies to Hunter because Hunter does business in Texas. Tex. Civ. Prac. & Rem. Code ("CPRC") §§ 17.041-.069.

26. Preston alleged that Hunter committed a tort in Texas because he claims Hunter aided and abetted breaches of fiduciary duty committed by Mrs. Marshall. Preston also has alleged that Hunter breached his own duties to Preston.

27. Hunter purposefully availed himself to Texas and Preston's claims against Hunter arise out of his contacts with Texas.

28. The Court has specific jurisdiction over Hunter.

29. Hunter has continuous and systematic contacts with Hunter such that the Court has general jurisdiction over him.

30. Hunter has a pattern of continuing and systematic activity

10

that is sufficient to support general jurisdiction. Hunter and his law firm have, for decades, provided legal and business advice to clients in Texas.

31. Exercising jurisdiction over Hunter comports with traditional notions of fair play and substantial justice.

**APPELLANT'S ISSUES**

In his first two issues, appellant contends the trial court erred in exercising general jurisdiction over him because (1) the location of an individual's domicile is the paradigmatic legal inquiry and the undisputed evidence establishes that appellant is not domiciled in Texas; and (2) the trial court applied the wrong jurisdictional analysis applicable to corporations and, even under that standard, the facts of the case do not establish a basis for the exercise of general jurisdiction.

Appellant's second issue argues the trial court erred in exercising specific jurisdiction over him because no substantial connection exists between appellee's claim and appellant's purported contacts with Texas.

In his third issue, appellant asserts the trial court's exercise of jurisdiction over him—whether general or specific—violates traditional notions of fair play and substantial justice. Appellant's fourth issue claims the trial court erred in exercising jurisdiction over him—whether general or specific—based on claims arising from appellant's representation of Mrs. Marshall because appellant is immune from liability for such claims. Lastly, appellant's fifth issue contends he did not submit to this state's jurisdiction pursuant to the Texas Property Code. *See* Tex. Prop. Code § 117.011(d).

**APPLICABLE LAW**

The Texas long-arm statute allows the exercise of personal jurisdiction as far as the federal constitutional requirements of due process permit. *TV Azteca v. Ruiz*, 490 S.W.3d 29, 37 (Tex. 2016). Due process is satisfied when the nonresident

11

defendant has established minimum contacts with the forum state and the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *Id.* (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

A nonresident defendant's minimum contacts can create either general or specific jurisdiction. *TV Azteca*, 490 S.W.3d at 37. Minimum contacts exist when the nonresident defendant purposefully avails itself of the privilege of conducting activities within the forum state. *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 784 (Tex. 2005). There are three components to this inquiry:

(1) are the relevant contacts those of the defendant, not the unilateral activity of another party or a third person;

(2) are the contacts purposeful rather than random, fortuitous, isolated, or attenuated; and

(3) has the defendant sought some benefit, advantage, or profit by availing itself of the jurisdiction?

*Searcy v. Parex Res., Inc.*, 496 S.W.3d 58, 67 (Tex. 2016). Additionally, section 17.042 of the Texas Civil Practice and Remedies Code, "Acts Constituting Business in This State," allows jurisdiction to be exercised over a nonresident defendant in a suit on a business transaction or tort, if the nonresident:

(1) contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state;

(2) commits a tort in whole or in part in this state; or

(3) recruits Texas residents, directly or through an intermediary located in this state, for employment inside or outside this state.

Tex. Civ. Prac. & Rem. Code § 17.042.

*Specific Jurisdiction*

Because we conclude the trial court's order is supportable on specific jurisdiction grounds, we address that issue and need not consider the parties' general jurisdiction arguments.  Specific jurisdiction is transaction focused. A trial court has

12

specific jurisdiction over a nonresident defendant when (1) the defendant's contacts with the forum state are purposeful and (2) the cause of action arises from or relates to those contacts. *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010). When a nonresident defendant is subject to specific jurisdiction, the trial court may exercise jurisdiction over the defendant even if the defendant's forum contacts are isolated or sporadic. *TV Azteca*, 490 S.W.3d at 37. In conducting a specific-jurisdiction analysis, we focus on the relationship among the defendant, the forum, and the litigation. *Kelly*, 301 S.W.3d at 658. There must be a substantial connection between the defendant's contacts and the operative facts of the litigation. *Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 414 S.W.3d 142, 156 (Tex. 2013). Generally, a specific-jurisdiction analysis should be performed on a claim-by-claim basis. *Id.* at 150. When separate claims are based on the same forum contacts, however, a separate analysis of each claim is not required. *Id.* at 150–51.

## *Burden of Proof*

In a special appearance, the plaintiff and the defendant bear shifting burdens of proof. *Kelly*, 301 S.W.3d at 658. The plaintiff bears the initial burden of pleading sufficient facts to bring a nonresident defendant within the reach of the Texas long-arm statute. *Id.*; *see* Tex. Civ. Prac. & Rem. Code § 17.042. If the plaintiff meets its initial burden, the burden then shifts to the defendant to negate all bases of personal jurisdiction alleged by the plaintiff. *Kelly*, 301 S.W.3d at 658. "Because the plaintiff defines the scope and nature of the lawsuit, the defendant's corresponding burden to negate jurisdiction is tied to the allegations in the plaintiff's pleading." *Id.* At the special-appearance stage, we must take the plaintiff's allegations as true. *See Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 585 (Tex. 2007). A defendant can negate jurisdiction on either a factual or a legal basis. *Kelly*, 301 S.W.3d at 659. "Factually, the defendant can present evidence that

it has no contacts with Texas, effectively disproving the plaintiff's allegations." *Id.* Or the defendant can show that even if the plaintiff's alleged facts are true, the evidence is legally insufficient to establish jurisdiction. *Id.* If the defendant meets its burden of negating all alleged grounds for personal jurisdiction, then the plaintiff must respond with evidence "establishing the requisite link with Texas." *See id.* at 660.

*Fair Play and Substantial Justice*

If the court concludes that the defendant has sufficient minimum contacts with the state to establish personal jurisdiction, the defendant bears the burden of establishing that the exercise of personal jurisdiction would offend traditional notions of fair play and substantial justice. *See Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 231 (Tex. 1991).

To determine whether the exercise of personal jurisdiction offends traditional notions of fair play and substantial justice, the court considers: (1) the burden on the defendant, (2) the interests of the forum state in adjudicating the dispute, (3) the plaintiff's interests in obtaining convenient and effective relief, (4) the international justice system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the nations in furthering fundamental substantive social policies. *Moncrief Oil*, 414 S.W.3d at 155. Only in rare cases will the exercise of personal jurisdiction not comport with fair play and substantial justice when a nonresident defendant has purposefully availed itself of the privilege of conducting business within a forum. *Id.* at 154–55; *Guardian Royal*, 815 S.W.2d at 231.

STANDARD OF REVIEW

Because it is a question of law, we review *de novo* whether a trial court has personal jurisdiction over a defendant. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). However, the trial court frequently must resolve

questions of fact to decide the issue. *Id.* When a trial court issues findings of fact and conclusions of law, as in this case, they are binding upon this court unless challenged on appeal. *Dresser-Rand Group, Inc. v. Centauro Capital, S.L.U.*, 448 S.W.3d 577, 580 (Tex. App.—Houston [14th Dist.] 2014, no pet.).[1]

## SPECIFIC JURISDICTION ARGUMENT

Appellant does not claim on appeal that he lacks minimum contacts or has not committed acts constituting business in this state. *See Michiana*, 168 S.W.3d at 784; *see also Searcy*, 496 S.W.3d at 67; Tex. Civ. Prac. & Rem. Code § 17.042. Rather, appellant contends he is not amenable to suit in Texas based upon specific jurisdiction because appellee's cause of action does not arise from or relate to his contacts with the state.

Appellee alleged appellant represented appellee and that appellant's actions constituted a breach of appellant's fiduciary duties to appellee. Appellee's pleadings reveal the following facts were alleged in support of appellee's claims: Appellant told appellee that steps were being taken to give him shares in Trof, Inc. in exchange for appellee's demotion at MarOpCo, Inc. and a reduction in his pay. However, appellant "never intended" to give appellee possession of the Trof shares. Mrs. Marshall indemnified appellant against any claims relating to the termination of appellee's employment with MarOpCo.[2] Appellant assisted in moving the Marital

---

[1] We reject appellant's claim that we "need not defer to these untimely findings" as he does not allege harm. Furthermore, the trial court's findings and conclusions were filed November 22, 2017, nearly three months before appellant's brief was filed on February 16, 2018. *See Page v. Hulse,* No. 14-06-00731-CV, 2007 WL 2127717, *2 n. 3 (Tex. App.—Houston [14th Dist.] July 26, 2007, pet. denied) (mem. op.). (Although appellant's brief was originally due on November 20, 2017, filing of supplemental clerk's records and reporter's records continued until February 8, 2018. Appellant's brief was then set due on February 16, 2018.) After both parties filed their initial briefs, additional supplemental clerk's records were filed until May 18, 2018

[2] It is undisputed that MarOpCo is a Texas corporation; its parent company, Trof, is a Delaware corporation; and the principal office of both are in Dallas, Texas. *See Hunter v. Marshall*, No. 01-16-00636-CV, 2018 WL 6684840, at *1 (Tex. App.—Houston [1st Dist.] Dec. 20, 2018,

Trust to Wyoming.

The trial court made the following findings of fact: Appellant has represented appellee. Appellant participated in the transfer of the assets of the Marital Trust to Wyoming. Appellant sent letters to appellee promising a transfer of Trof shares to appellee. Appellant has admitted his promise was false. The agreement indemnifying appellant was executed in Dallas, Texas.

In his brief, appellant does not dispute that he represented appellee but instead contends his representation is irrelevant because appellee's claim for aiding and abetting relates to Mrs. Marshall's, rather than appellant's, fiduciary duties to appellee. Appellant ignores the allegations in appellee's petition that appellant breached his fiduciary duties to appellee by falsely promising to transfer Trof shares to appellee and by moving the assets of the Marital Trust to another state.

Appellee met his initial burden to plead facts that his claim against appellant for breach of fiduciary duty arose from or relates to appellant's contacts with this state. The burden then shifted to appellant. *Kelly*, 301 S.W.3d at 658. Appellant's brief fails to demonstrate that, taking appellee's alleged facts as true, the evidence is legally insufficient to establish jurisdiction. *Id.* Because appellant has not shown that his burden was satisfied, appellee was not required to respond with evidence "establishing the requisite link with Texas." *See id.* at 660. Being bound by the trial court's unchallenged findings of fact, we conclude the trial court did not err in concluding it could exercise specific jurisdiction over appellant. Appellant's second issue is overruled.

FAIR PLAY AND SUBSTANTIAL JUSTICE ARGUMENT

Appellant argues the exercise of jurisdiction over him violates traditional

no pet.).

16

notions of fair play and substantial justice because "[i]t would impose a significant burden on [appellant] to litigate in Texas given that he splits his time between Florida and Utah." The only reference to the record is to appellant's affidavit, where he asserts the same argument and claims it would be extraordinarily expensive to travel to Texas. This same affidavit avers that appellant "splits" his time travelling between Florida and Utah.

It is appellant's burden to present a compelling case that the presence of some other considerations renders the exercise of jurisdiction unreasonable. *Guardian Royal*, 815 S.W.2d at 231; *see also Hoagland v. Butcher*, 396 S.W.3d 182, 196 (Tex. App.—Houston [14th Dist.] 2013, pet. denied). In determining whether appellant met his burden, we consider the following factors: (1) the burden on the defendant; (2) the interests of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering substantive social policies. *Guardian Royal*, 815 S.W.2d at 228, 231. Only in rare cases will the exercise of jurisdiction not comport with fair play and substantial justice when a nonresident defendant has purposefully established minimum contacts with the forum state. *Id.* at 231. Furthermore, distance from the forum is generally not sufficient to defeat jurisdiction because the availability of "modern transportation and communication have made it less burdensome for a party sued to defend [itself] in a [s]tate where [it] engages in economic activity." *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223, 78 S. Ct. 199, 201 (1957).

Appellant merely lists the above factors. *Cf. Hoagland*, 396 S.W.3d at 196 (merely listing factors court must consider does not meet defendant's burden). Accordingly, we conclude appellant has not shown how the trial court's exercise of

17

personal jurisdiction over the nonresident would offend traditional notions of fair play and substantial justice. Appellant's third issue is overruled.

## ATTORNEY IMMUNITY ARGUMENT

Appellant's fourth issue claims the trial court erred in exercising jurisdiction over him—general or specific—based on claims arising from appellant's representation of Mrs. Marshall because appellant is immune from liability for such claims. Appellant contends that he established the affirmative defense of attorney immunity because his conduct arose from the discharge of his duties to Mrs. Marshall.[3]

As appellant acknowledges, attorney immunity is an affirmative defense. *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 484 (Tex. 2015); *Sacks v. Zimmerman*, 401 S.W.3d 336, 339–40 (Tex. App.—Houston [14th Dist.] 2013, pet. denied). Appellant cites two cases claiming we may consider his affirmative defense of attorney immunity as a basis to reverse the trial court and grant his special appearance. *See Linton v. Airbus Indus.*, 934 S.W.2d 754, 757 (Tex. App.—Houston [14th Dist.] 1996, writ denied); *see also Smith v. Cattier*, No. 05-99-01643-CV, 2000 WL 893243, at *4 (Tex. App.—Dallas July 6, 2000, no pet.). These cases involve official or sovereign immunity, which deprives a trial court of subject-matter jurisdiction. *See Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217 (Tex. 2004); *Singleton v. Casteel,* 267 S.W.3d 547, 550 (Tex. App.—Houston [14th Dist.] 2008, pet. denied). Attorney immunity, however, is not a jurisdictional issue. *Diogu*

---

[3] Appellee's brief asserts appellant raised this affirmative defense in a motion to dismiss, which was denied by the trial court. The record before this court does not contain either the motion or the order of denial, but appellee does not claim appellant waived his special appearance. *See Global Paragon Dallas, LLC v. SBM Realty, LLC*, 448 S.W.3d 607, 611-12 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (Rule 120a requires that a special appearance be filed prior to any other plea, pleading or motion, and that it be heard and determined before any other plea or pleading. Tex. R. Civ. Proc. 120a).

18

*v. Aporn*, No. 01-17-00392-CV, 2018 WL 3233596, at *5 (Tex. App.—Houston [1st Dist.] July 3, 2018, no pet.). Because this is an appeal from the denial of a special appearance, our review is confined to matters of personal jurisdiction. Appellant's fourth issue is overruled.

## CONCLUSION

We have determined the trial court did not err in exercising specific jurisdiction over appellant because there is a substantial connection between appellee's claim and appellant's contacts with Texas and overrule appellant's second issue. Further, we have concluded the trial court's exercise of jurisdiction does not violate traditional notions of fair play and substantial justice and overrule appellant's third issue. Our disposition of appellant's second and third issues make it unnecessary to decide his first or fifth issues claiming there is no general jurisdiction over appellant and appellant did not submit to jurisdiction under the Texas Property Code. Appellant's fourth issue is not jurisdictional and is overruled.

Accordingly, the trial court's order denying appellant's special appearance is affirmed.


/s/     Margaret "Meg" Poissant
        Justice

Panel consists of Justices Wise, Jewell and Poissant.

19